# Bailey *versus* Allegheny National Bank.

104 425
123 17
133 413

1. Where a testator directs conversion of his land, the proceeds to be divided among his children, the interest of the latter is personalty, coupled with the inherent right in them to elect to take the land as realty. A mortgage given under such circumstances by one child, operates as an equitable assignment of her undivided interest, and also as a provisional election by her to take as land; and where all the children subsequently elect to take as land, said mortgage thereupon constitutes a lien on the undivided interest of the mortgagor in the land, which lien, after partition, attaches to the purpart allotted to the mortgagor in severalty, subject only to the lien of owelty of partition charged thereon.

2. In such case the interest originally mortgaged was considered in equity, and for a special purpose, personalty; by the election of the bene- ficiaries it became realty; the mortgage, which originally, as between the parties, was an equitable assignment of an interest springing out of realty, still adhered to and bound such interest in its newly assumed form of land; and when the right so acquired was enforced by a judicial sale under the mortgage, it ripened into title in the purchaser.

3. Such mortgage is prior in lien to a second mortgage given by the mortgagor on her undivided interest, after the election by all the children to take as land, and before partition.

4. A sheriff's sale under a judgment obtained on such first mortgage, after partition, vests a good title in the purchaser to the mortgagor's purpart, discharged of the liens of the second mortgage and of owelty charged thereon.

5. A testator directed his lands to be sold, and the proceeds to be divided among his children. A., one of the children, mortgaged her undivided interest to B. Subsequently, all the children, including A., elected to take the land as land. A. then executed another mortgage of her undivided interest to C. Partition was then had, and two certain tracts of land were allotted to A. in severalty, subject to the payment of certain sums as owelty of partition. Said two tracts were subsequently sold at three sheriff's sales, in the following order, viz. (1) under the first mortgage, sold to D.; (2) under the second mortgage, sold to E.; (3) under a judgment for owelty of partition, also sold to E. In eject- ment by D. against E: *Held*, that the plaintiff was entitled to recover.

6. If the description in a mortgage be sufficient to identify the prem- ises intended to be covered, it is no objection to the validity of the mort- gage that the description is in general terms, as of "all the right, title, interest and claim (of the mortgagor) in and to the farm of J. A., deceased, in W. township."

7. Under a testamentary trust "that no one of the husbands or wives of my said children shall have any interest in or control over the prop- erty hereby bequeathed, but that the shares of my said children shall belong to them separately and exclusively, whose receipts therefor shall be taken as a full discharge," a married woman, one of said children, may (her husband joining), make a valid mortgage of her beneficial in- terest under the will.

October 29th 1883. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas No. 1 of *Allegheny county :* Of October and November Term 1883, No. 89.

Ejectment, by the Allegheny National Bank against Robert J. Bailey, to recover two tracts of land particularly described in the writ, containing respectively over six acres and over three acres. Plea, not guilty.

On the trial, before STOWE, P. J., it was admitted that John Adams died seised of a farm of about 82 acres, including the premises in question, December 3d 1872, leaving to survive him a widow and seven children of whom Mrs. Annie Eliza Mackey, wife of W. H. Mackey was one. By his will, proved January 13th 1873, he directed, inter alia, as follows :

"After the decease of my wife Eliza, I order and direct my executors, or the survivor of them, to sell, either at public or private sale, my farm and other real estate as may seem to them best upon such terms and conditions as to pay as they may think proper, and convey the same to the purchaser or purchasers thereof, in as full a manner as I myself could do were I living. Subject to the conditions and abatements hereinafter stated it is my will that the proceeds of my estate be divided into six (seven) shares, that is to say, to Annie Eliza Mackey one share, etc." . . . . "It is my will that no one of the husbands or wives of the aforesaid children shall have any interest in or control over the property hereby bequeathed, but that the shares of my said children shall belong to them separately and exclusively, whose receipts therefor shall be taken as a full discharge to my executors."

The widow released her life estate in the land, and died May 3d 1875.

The plaintiff claimed title under a sheriff's sale upon a mortgage dated April 28th 1873, recorded May 7th 1873, given by W. H. Mackey and Annie E. Mackey, his wife, to the Freehold Bank and Building and Loan Association of the city of Pittsburgh, to secure the payment of $700. The mortgaged premises consisted of (1) a lot of ground, described by metes and bounds, containing one acre and thirteen eighty-one-hundredth perches. This lot was not involved in the present controversy. (2) Immediately following the description of said lot in the mortgage were the following words : "And also all the right, title, interest and claim of Annie E. Mackey in and to the farm of John Adams, deceased, in Wilkins township, Allegheny county, Pennsylvania." The admission of this mortgage in evidence was objected to by the defendant on the ground that it was void for want of sufficient description, as to all except the first described lot, which was not involved in this

controversy.  Objection overruled.  Exception.  (Third assignment of error.)

Plaintiff put in evidence the record. of proceedings in partition of the estate of John Adams, deceased, in the court of Common Pleas No. 1 of Allegheny county, in equity, to March Term 1876.  It appeared by this record that the several devisees under the will of John Adams, deceased, by agreement in writing dated June 1st 1875, duly acknowledged, elected to take the testator's real estate as land instead of having it sold by the executors, and the proceeds divided among them, as directed in the will.  Further, that the two tracts here in dispute were allotted, as constituting "purpart No. 6," to Mrs. Annie E. Mackey, subject to the payment of $175, with interest from December 7th 1877, as owelty of partition, to Mrs. Harriet A. Brown ; also subject to additional owelty charges in favor of other children to whom purparts of less value were awarded ; and also subject to the payment of one seventh of $10,000, being the amount of a mortgage given by all the devisees of John Adams, deceased, including Mrs. Annie E. Mackey and husband, to Jacob F. Slagle, dated April 22d 1875 (prior to the partition) recorded June 18th 1875, of their undivided interest in twenty-one acres of the John Adams' farm, described by metes and bounds, which did not include the two tracts in dispute.

Plaintiff also put in evidence the record of an action of scire facias by the Freehold Bank against W. H. Mackey and Annie E. Mackey, his wife, on her said mortgage to the Freehold Bank, dated April 28th 1873, showing judgment recovered thereon on July 14th 1880, and lev. fa. issued thereon, under which the mortgaged premises were sold at sheriff's sale on September 10th 1880, to the Allegheny National Bank (the plaintiff in this case), for $500, and a sheriff's deed was acknowledged to said bank for the same September 11th 1880.  This record showed that on October 16th 1880, the sheriff filed a special return of this sale, awarding the fund, less costs and taxes, to the Freehold Bank, the execution creditor.  Exceptions filed to this return October 25th 1880, by Albert R. Adams and Sarah J. Bonfield, two of the children of John Adams, deceased, in whose favor owelty of partition had been charged on said purpart No. 6, were dismissed by the court January 3d 1881.  (No appeal appears to have been taken from this decree.)  Plaintiff then rested.

The defendant claimed title under two sheriff's sales had under the following proceedings :

(1) On October 8th 1875, after the date of the said election of the devisees to take their interests as land, but before the commencement of. the proceedings in partition, Annie E.

Mackey and husband, executed to Robert W. Mackey a mortgage for $2,000, recorded October 14th 1875, of her interest in the John Adams farm, described as follows: "All the right, title, interest and claim of Annie E. Mackey, of, in and to, all that certain tract of land situate in Wilkins township, county and state aforesaid, devised to her by her father, John Adams, deceased, by his last will and testament, recorded in the Register's Office of Allegheny county, in Will Book vol. 16, page 451." This mortgage was sued out, by scire facias, and judgment obtained July 14th 1880, and the mortgaged premises were sold at sheriff's sale on September 11th 1880, to Robert J. Bailey, the defendant, for $1,600, and a sheriff's deed acknowledged to him November 27th 1880, conveying, by metes and bounds, the two tracts of land in dispute, as the same were severally bounded and described, constituting purpart No. 6, in the said proceedings in partition.

On August 7th 1880, Mrs. Harriet H. Brown recovered judgment for $203, against W. H. and Annie E. Mackey, in an action of scire facias sur decree in partition, being for the said owelty of $175, with interest, charged as aforesaid on purpart No. 6. Under writs of fi. fa. and vend. ex. issued on said judgment, the two tracts in question, constituting purpart No. 6, were sold at sheriff's sale on December 11th, 1880, to Robert J. Bailey, the defendant, for $315, and a sheriff's deed, was acknowledged to him for the same on July 30th 1881.

The defendant also put in evidence the record of a suit, and judgment obtained March 5th 1878, on the said mortgage given by the devisees to Jacob F. Slagle for $10,000 on the twenty-one acres not in suit (which were embraced in purparts Nos. 1, 2, and 3), and a sheriff's sale of the mortgaged premises thereunder, on April 5th 1878, to Slagle's executors for $9,000, and a sheriff's deed to them therefor. Defendant then rested.

The following table of principal dates is appended for convenience:

| 1872. | Dec. 4. | Testator, John Adams, died. |
|---|---|---|
| 1873. | April 28. | Mortgage, Annie E. Mackey and husband to Freehold Bank. |
| 1875. | June 1. | Election of devisees to take as land. |
| 1875. | October 8. | Mortgage, Annie E. Mackey and husband to Robert W. Mackey. |
| 1876. | Jan. 14. | Bill in partition filed. |
| 1877. | Dec. 3. | Final decree in partition, allotting purpart No. 6 to Annie E. Mackey, charged with owelty. |
| 1880. | Aug. 7. | Judgment for owelty of partition, in favor of Harriet A. Brown. |

[Bailey *v.* Allegheny National Bank.]

1880.  Sept. 10.  Sheriff's sale under Freehold Bank mortgage, to plaintiff.

1880.  Sept. 11.  Sheriff's sale, under R. W. Mackey mortgage, to defendant.

1880.  Dec. 11.  Sale, under Harriet A. Brown judgment for owelty, to defendant.

1882.  Feb. 23.  This ejectment brought.

The court directed the jury to find a verdict for the plaintiff, subject to the question reserved, whether under all the evidence, the plaintiff was entitled to recover. Verdict accordingly. The court subsequently, after argument on a motion to enter judgment for the defendant non obstante veredicto, entered judgment for the plaintiff on the question reserved and on the verdict.

STOWE, P. J., filed the following opinion (after reciting the facts): "It is alleged that the sheriff's sale to the plaintiff under the lev. fa. issued upon Mrs. Mackey's mortgage to the Freehold Bank conveyed no title, because under the will of Adams to Mrs. Mackey she had only a chattel interest, and that it was not converted into realty, if ever, until the agreement to take the real estate as land and not as money was executed, June 10th 1875. That, therefore, the Freehold mortgage never was a lien upon this property, and the Robert Mackey mortgage was the first lien after the owelty upon the land in controversy. The question then, so far as these two mortgages are concerned, is, which has precedence, and depends upon whether the Freehold Bank mortgage was a lien at all. Although at the time the latter was executed and recorded Mrs. Mackey had no interest which could be bound by the lien of a mortgage, she was in the position of vendee for value (Lancaster *v.* Dolan, 1 Rawle 231), and any title she afterwards acquired would result to the benefit of the mortgagee. Thus in Clark *v.* Martin, 49 Pa. St. 303, we have it said: 'It is not to be controverted that a vendor who undertakes to sell a full title for a valuable consideration when he has less than a fee, holds it in trust for 'the vendee, and equally clear that if a vendee mortgage his title the perfection of the title enures to the benefit of the mortgagee;' and there is no reason why it should not be so. Every principle of justice and equity would estop a mortgagor who subsequently acquired title from setting up as a defence that he mortgaged or undertook to mortgage what he had no right to, when a judgment against him would bind what he assumed to own in the beginning and upon which he procured value. I think, therefore, assuming Mrs. Mackey's power to mortgage at all, that as soon as the agreement was executed which converted the interest of Mrs. Mackey in the land in suit into real

estate the mortgage given the Freehold Bank attached, and a sale upon it passed title to plaintiff.

"But it has been suggested that even if such is the case, as between these sales on the mortgages, defendant has another claim under proceedings to recover owelty in partition charged against Mackey and wife, upon which judgment was obtained August 7th 1880, and sale December 11th 1880, which is better than either of the others. And to meet this phase of the case it is argued that under the will of Adams Mrs. Mackey's estate, when converted into realty, was a separate use trust, which she had no right to sell or dispose of, and that the mortgage and sale thereunder could convey no interest to the purchaser. I think the will made the estate of Mrs. Mackey a "separate use trust," and it cannot be denied that in this state the law is settled that the cestui que trust has no power over the estate not given by the deed or instrument creating the trust. If, then, the will did not give Mrs. Mackey the power to dispose of her estate, the mortgage executed by her, and the subsequent sale, did not divest her interest in the land mortgaged, and defendant would take title under the sale for owelty. The land itself, under the agreement recited, took the place of her share of the proceeds of the land directed to be sold by the executors, and was held in equity, subject to the same trusts, and with the same power over it which was impressed by the will upon the proceeds of the testator's farm and other real estate when sold. The will says, 'But the shares of my said children shall belong to them separately and exclusively.' It seems to me that to give that provision proper effect we must hold that by implication a general power of disposal by gift, grant, devise or otherwise was given, and that a reasonable construction of the will gave her the right to dispose of all her interest in the personalty, while it was personalty, and of the realty when it was converted, with like effect as though it were her own, absolute, separate estate, directly devised to her without any suspicion of trust: See Chrisman *v.* Wagoner, 9 Pa. St. 473.

"Judgment is now directed to be entered upon the question of law reserved in favor of plaintiff, as found by the jury, upon payment of verdict fee."

The defendant thereupon took this writ of error, assigning for error the admission in evidence of the said mortgage by Annie E. Mackey and husband to the Freehold Bank, and the proceedings and sheriff's sale thereunder, and the entry of judgment as aforesaid.

*John Barton* and *A. M. Brown* ( *Whitesell & Son* with them), for the plaintiff in error.—(1.) At the date when Mrs.

Mackey executed her mortgage to the Freehold Bank, under which the defendant in error claims, she had no title, under her father's will, to the land of which he died seised. The testator's positive direction to sell the land had, immediately on his death, effected equitable conversion, and her interest was personalty, and, moreover, was limited in trust for her sole and separate use. A judgment against her would have been no lien thereon: Demster v. Adams, 30 Pitts. L. J. (1883) 423; Brolasky v. Gally, 1 P. F. S. 509; Gray v. Smith, 3 Watts 291. The mortgage was therefore invalid at its creation, and was not validated by her subsequent election to take the land, instead of its proceeds. The conveyance or mortgage by a married woman of a chattel real, to be thereafter acquired, is absolutely void, and her subsequent acquisition thereof does not enure to the benefit of the mortgagee: Dorris v. Erwin, 5 Out. 239. The judgment on the void mortgage was a nullity, but even had the mortgage been voidable as to Mrs. Mackey, judgment was not obtained on it until after the date of her mortgage to Robert W. Mackey, under which the defendant claims, and he, not having been made a party to the sci. fa., is not estopped from now setting up the void or voidable character of said mortgage: Nace v. Hollenback, 1 S. & R. 540; Evans v. Mylert, 19 Pa. St. 402; Commonwealth v. Duncan, 8 Barr 93; Mevey's Appeal, 4 Barr 80.

(2) But even if Mrs. Mackey's interest had been realty at the date of her mortgage to the Freehold Bank, the description of such interest contained in that mortgage is too vague and uncertain to create a lien to bind her, much less to bind R. W. Mackey, a subsequent mortgagee, and those claiming under him. There was nothing on the record, when he took his mortgage, to give notice that the two tracts in dispute were included in the Freehold Bank mortgage, even if he had searched prior to the date when the parties elected to take the land: Jones on Mortgages 66; Rawle on Covenants for Title 435; Griffeth v. Dobson, 3 P. & W. 228; Tryon v. Carlin, 5 Watts, 371; Calder v. Chapman, 2 P. F. S. 359. For the foregoing reasons we contend that the mortgage to the Freehold bank was no lien on the premises in question, either before or after the partition, and no title passed by the sheriff's sale thereunder to the defendant in error.

(3) But assuming, for argument's sake, that the Freehold Bank mortgage was a first lien on Mrs. Mackey's undivided interest in the land as realty, said mortgage became, after partition, a second lien on the purpart No 6, allotted to her in severalty, subject to the owelty charged thereon, which was a first lien: McCandless's Appeal, 2 Out. 489. The sheriff's sale under said mortgage, to plaintiff, passed the title subject to the owelty, that not having been paid out of the purchase money,

which was awarded to the execution creditor, and which, even
if it had been awarded to the owelty creditors, was insufficient
to pay them in full, and would only have discharged the owelty
liens pro tanto. When, therefore, the property was subsequently
purchased by the plaintiff in error at the sheriff's sale under Mrs.
Brown's judgment for her owelty charged thereon, he obtained
a good title thereto, discharged of any claim of title derived
under the Freehold Bank mortgage: McCandless's Appeal,
supra; Demster *v.* Adams, supra; Allegheny National Bank's
Appeal, 3 Out. 148. The plaintiff in error, a bona fide pur-
chaser without notice, has paid at the two sheriff's sales $1,915,
while the defendant in error has paid only $500, for which it
obtained the one acre thirteen perches lot, and now claims to
recover ten acres additional.

*George W. Guthrie* (with him *George Shiras, Jr.,* and *Fred.
M. Magee*), for the defendant in error.—Mrs. Mackey's mort-
gage to the Freehold Bank of her undivided interest was in
effect an election by her to take that interest as land, subject to
the right of the other devisees to enforce conversion as directed
by the testator. And when they also subsequently elected to
take as land, Mrs. Mackey's prior election was thereby rendered
final, so that neither she nor any parties claiming under her
could afterwards deny its effect: Hay *v.* Mayer, 8 Watts 211;
Costen's Appeal, 1 Harris 292; May *v.* Roper, 4 Sim. 360;
Briggs *v.* Chamberlain, 11 Hare 69; Tuer *v.* Turner, 20 Beav.
560. The judgment in the scire facias on the Freehold Bank
mortgage is conclusive against the mortgagor and all persons
claiming under her by subsequent conveyance: Ross *v.* Lynch,
2 Pitts. Rep. 472; Hartman *v.* Ogborn, 4 P. F. S. 120; Tay-
lor *v.* Young, 21 P. F. S. 81. A subsequent mortgagee is not
such a terre-tenant as should be made a party to a sci. fa. on a
prior mortgage, and he is therefore not entitled to a subsequent
day in court.

That the mortgages to the Freehold Bank and R. W. Mack-
ey, given by Mrs. Mackey before the partition, would follow
the purpart subsequently set apart to her, and that the owelty
charged on such purpart would be the first lien thereon, and
entitled to priority over these mortgages, is now too well settled
to admit of controversy. It necessarily follows that if the
mortgage to the Freehold Bank was valid between the parties,
the sale thereunder to the defendant in error, on September
10th 1880, divested the owelty (which was not a fixed lien) and
the mortgage to R. W. Mackey (which was subsequent to it,
whether entitled to priority over the mortgage to the Freehold
Bank or not), and passed to defendant in error a title to the
land described in the writ of ejectment in this case, being the

purpart set off to Mrs. Mackey, which could not be affected or impaired by subsequent sales on such divested liens.

Mr. Justice STERRETT delivered the opinion of the court, January 7th 1884.

The question presented by this record is whether the Allegheny National Bank, as purchaser at the sheriff's sale hereinafter mentioned, acquired title to the land in controversy. If it did, there was no error in entering judgment on the verdict in its favor.

The facts upon which the question arises are substantially these : In 1872, John Adams devised his homestead farm to his wife, for life, and directed that after her decease it should be sold by his executors and the proceeds divided among his seven children, one of whom was the wife of William H. Mackey. In June 1875, after the decease of testator's widow, his children, with the respective husbands and wives of those who were then married, signed an agreement, duly acknowledged and recorded, by which they elected to take the land instead of the proceeds thereof ; and, afterwards by proceedings in partition, commenced in 1876, the farm was divided into several purparts, two of which, charged with owelty, were allotted in severalty to Mrs. Mackey. The title to these two purparts is the subject of controversy in this suit.

In 1873, several months after the decease of her father, Mrs. Mackey and her husband mortgaged to the Freehold Bank a lot which she owned in her father's lifetime, and also her " right, title, interest and claim . . . . in and to " the farm above mentioned as security for a loan of $700. After the parties in interest formally elected to take land in lieu of money, but before proceedings in partition were instituted, Mrs. Mackey and her husband made a mortgage of all her "right, title, interest and claim of in and to " the same farm to Robert W. Mackey, to secure the payment of $2,000. These mortgages were duly foreclosed and on each of the judgments, thus obtained, a levari facias was issued. On the writ in favor of the Freehold Bank the property was sold, September 10th 1880, and duly conveyed to the Allegheny National Bank, plaintiff below; and on the following day the same property was sold on the Robert W. Mackey writ and subsequently conveyed to the plaintiff in error. In the meantime judgment had been obtained on the recognizance for owelty, and on that the property was again sold, in December 1880, and purchased by plaintiff in error.

It thus appears that the title, on which the Allegheny National Bank recovered in the court below, is based on the first mentioned mortgage and the sale thereon. The conten-

tion of the plaintiff in error is that the mortgage was invalid and no title passed by the sale, for the reasons, 1st. That the description of the interest, alleged to have been mortgaged, is too vague and uncertain; 2d. That at the time the mortgage was executed, Mrs. Mackey had no interest in the land, and consequently the mortgage never became a lien thereon; 3d. That, under the provisions of her father's will, she had no power to alien or encumber the interest subsequently acquired by the joint election.

There is no merit in the first reason. The description, as given in the mortgage, is "All the right, title, interest and claim of Annie E. Mackey, in and to the farm of John Adams, deceased, in Wilkins townsh'p, Allegheny county, Pennsylvania." This is quite sufficient to identify the property intended to be covered by the mortgage, and nothing more was required.

The second proposition involves a graver question. If the mortgage never became a lien on the land, it necessarily follows that the title of Mrs. Mackey was not divested by the first sheriff's sale; but, if it ever attached to and became a lien on her undivided interest in the farm, that lien, by virtue of the proceedings in partition, was shifted from her undivided interest in the entire tract, and concentrated on the purports allotted to her in severalty, subject, however, to the owelty which was clearly the first lien thereon. The question of priority, as between the two mortgages, growing out of the fact that one was given before the joint election to take the land and the other afterwards, and perhaps without actual or constructive notice of the first, is not involved in this case. Conceding, for the sake of argument, that the owelty was the only lien ahead of the second mortgage, and that the latter was prior, as a lien, to the first mortgage, still the result would be the same; because, if the land was bound by the first mortgage, the judicial sale on it, with notice to everybody, divested all the liens and passed a good title to the purchaser. The real question, therefore, is whether the Freehold Bank mortgage attached to and became a lien on Mrs. Mackey's subsequently acquired interest in the farm. If it did there can be no question as to the effect of the foreclosure and sale to the bank.

It cannot be doubted, that, in equity, the testamentary direction to sell and distribute the proceeds was an out and out conversion of the real estate into personalty. There was, of course, no actual conversion of the land into money; but, for the purpose of effectuating the intention of the testator, equity considered what he ordered to be done as actually accomplished. As the result of this principle of constructive conversion, testator's children, prior to their election to take the land, had no

interest therein that could be bound by the lien of a judgment. They could, of course, assign or dispose of their respective interests, absolutely or conditionally, and thus invest their respective assignees with all the rights they themselves had under the will; but neither of them, without the assent of the others, could so assign, transfer or encumber his or her interest as to interfere with the right of each to insist on a sale and distribution of the proceeds. In short, their interest under the will, before they elected to take the land, was personal property,—a right to receive their respective shares of the proceeds when the land was actually converted into money : but, in one respect at least, it differed from an ordinary chose in action. Coupled with, and springing from their interest, as legatees of the proceeds of the land directed to be sold, they had an inherent right to elect to take the land instead of the money ; and, having by their joint agreement of June 1st 1875, exercised that right, that which was theretofore regarded, in equity, as personal property, was thereby constructively re-converted into real estate, and thenceforth, until the partition was effected, they were tenants in common of the land. By mortgaging to the Freehold Bank, "all her right, title," etc., Mrs. Mackey and her husband actually treated it as an interest in the land ; and, so far as it was in their power to do so, they exercised their right of election. It was at least a provisional election, contingent only upon the others agreeing to unite with them therein ; and, as soon as the joint agreement of June 1st 1875 was executed, the provisional election became absolute and enured to the benefit of the mortgagee. As between the parties to the mortgage, any other result would be grossly unjust and inequitable. While they may have been mistaken as to the nature of Mrs. Mackey's interest under the will, it was undoubtedly their intention to pledge it, whatever it might be, as security for the loan ; and hence, as between themselves, the mortgage was, at least, an equitable assignment of that interest. If the land had been actually converted into money under the provisions of the will, the bank undoubtedly would have been entitled to participate in the distribution. This principle is, in effect, decided in Horner's Appeal, 6 P. F. Smith 405 ; where, as here, a testator, after devising land to his wife, for life, directed it to be sold at her death, and the proceeds divided among his children. One of the sons having died in the widow's lifetime, his interest in the land was sold by his administrator under an order of the Orphans' Court for the payment of his debts. In holding that the deceased son's interest passed to the purchaser, it is said that notwithstanding the administrator mistook the interest of his intestate, and called it real estate, his deed is an " equitable assignment at least, if indeed it is not an actual assignment at

[Bailey *v.* Allegheny National Bank.]

law, of the personal interest of the intestate in the proceeds of the testator's realty when it should be converted ; and this the more so, when we consider that, in fact, there was no conversion, the real estate yet standing as the existing source from which the interest in the proceeds was to spring, and was viewed as personalty only through the medium of equity." Assuming then that the bank thus became the equitable assignee of Mrs. Mackey's interest, and bearing in mind that the constructive change of that interest from personalty into realty, was effected by the exercise of an inherent right of the legatees to do so, it surely cannot be successfully contended that the bank thereby lost the benefit of its security. On the contrary, the only conclusion that harmonizes with the principles of equity is that, as between the parties to the mortgage, the equitable reconversion e· ured to the benefit of the bank, and hence, the land was bound by the mortgage. By the exercise of an undoubted right on the part of the legatees to take the land as land, the necessity for a sale under the provisions of the will was superseded, and the character of Mrs. Mackey's interest was changed : that which, in equity and for a special purpose, was before considered personalty, became an undivided interest in the realty ; but the mortgage, which, as between the parties, was an equitable assignment of the interest springing out of the realty, still adhered to and bound it in its newly assumed form of land. The change in her interest was one of form rather than sub· stance : before the election it was technically considered personalty, for a special purpose, after that it was treated as realty. The right acquired to it in the one form still adhered to it in the other ; and, when that right was enforced by a judicial sale of the land, of which everybody had notice, it ripened into title in the purchaser.

As to the remaining proposition that, under the will of her father, Mrs. Mackey had no power to alien or incumber her interest in the estate, we think there was no error in so construing the will as to give her and her husband the right to dispose of her interest either when it was regarded in equity as personalty or after it assumed the character of real estate.

For the reasons above suggested, as well as others given by the learned president of the Common Pleas, he was right in concluding that as soon as the agreement of June 1st 1875 was executed, Mrs. Mackey's undivided interest in the land was bound by the Freehold Bank mortgage ; and that the foreclosure and sale upon that judgment divested her interest and passed title to the Allegheny National Bank. It follows, therefore, that there was no error in entering judgment on the verdict in favor of the bank.

Judgment affirmed.