# Holliday *v.* Hively.

*Trusts and trustees—Separate use trust—Will.*

A gift by will to a daughter who is a feme covert at the time of the execution of the will, "for her sole and separate use independently of her present or any future husband," creates a separate use trust for the daughter.

*Separate use trust—Husband and wife—Power to mortgage.*

A feme covert as to her separate estate has no power of disposition beyond what is conferred upon her in the instrument creating the trust.

The married women's acts of 1848 and 1893, in removing the disabilities of married women, have no application to the construction of instruments creating separate use trusts.

Where testatrix gave all of her estate to her executors with power to sell, and out of the proceeds of the sale gave a sum named to her son and one half of the balance to her daughter, "for her sole and separate use independently of her present or any future husband," and the executors do not sell the real estate, but the son and daughter make an amicable partition of it, the daughter has no power to mortgage her share.

Argued Oct. 24, 1900. Appeal, No. 70, Oct. T., 1900, by defendants, from judgment of C. P. No. 2, Allegheny Co., April T., 1898, No. 919, on verdict for plaintiff in case of George L. Holliday v. Jennie Hively et al. Before McColLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Scire facias sur mortgage. Before WHITE, P. J., who stated the facts to be as follows:

1. April 21, 1886, Barbara C. Elsey died, and by her will provided as follows:

"As to my real estate, to wit, the dwelling in which I now reside, I give, devise and bequeath the same to my executors hereinafter named, with full power to sell the same as a whole, or in parts or lots, and to give good and sufficient deed or deeds for the same to the purchaser or purchasers." The proceeds were to be divided between her son Warren Elsey and her daughter, Jennie Hively—Warren was first to have $625 out of the proceeds, the balance to be divided equally; as to the share of Mrs. Hively, the will provided: "I give, devise and bequeath the same to my daughter Jane Hively, wife of Harry Hively, for her sole and separate use independently of her present or any future husband." "Lastly, I nominate and appoint my son Warren Elsey and my daughter Jane Hively executors of this my last will and testament, with full power to execute the same in all its parts."

2. On June 17, 1886, Warren Elsey and Jane Hively elect to take the real estate and execute partition deeds, Jane Hively and her husband conveying a part, with the dwelling house, to

Warren Elsey; and Warren Elsey and wife conveying the other part, which was unimproved, to Jane Hively. Possession was taken in pursuance of these partition deeds, and retained ever since.

3. October 26, 1887, Jane Hively and husband executed a mortgage on her lot to Jos. P. Reed for $2,400, borrowed money, which was expended in improving her lot.

4. November 23, 1892, Jane Hively and husband executed a mortgage on her lot to the plaintiff, for $2,400, money borrowed, to pay the Reed mortgage, with which it was paid off.

5. September 18, 1897, after the plaintiff's mortgage was due, and eleven years after the partition deeds, Mrs. Hively had the orphans' court appoint the Fidelity Title & Trust Company trustee of her estate under the will of her mother.

6. February 14, 1898, twelve years after they had executed partition deeds, which had been duly recorded, Warren Elsey and Jane Hively executed a deed, ostensibly as executors of Barbara C. Elsey to the trustee for her lot.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff. Defendants appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*S. W. Cunningham*, with him *Thomas D. Chantler* and *William M. McGill*, for appellants.—This will is not ambiguous, and the words employed are the apt and appropriate words to create a separate use trust: 2 Perry on Trusts (3d ed.), secs. 647, 648; Wallace v. Coston, 9 Watts, 137; Rogers v. Smith, 4 Pa. 93; Rigler v. Cloud, 14 Pa. 361; Wright v. Brown, 44 Pa. 224; McMullin v. Beatty, 56 Pa. 389; Wells v. McCall, 64 Pa. 207; Richardson v. Aiken, 104 Pa. 567; Peoples Savings Bank v. Denig, 131 Pa. 241; Hays v. Leonard, 155 Pa. 474; Wilbert's Estate, 166 Pa. 113.

A separate use trust may be created of and concerning personal property as well as of real estate: 2 Perry on Trusts (3d ed.), sec. 665; Penna. Co. for Ins. on Lives v. Foster, 35 Pa. 134; Megargee v. Naglee, 64 Pa. 216; McMullin v. Beatty, 56 Pa. 389; Wells v. McCall, 64 Pa. 208; Reiff's App., 60 Pa. 361; Page's Est., 75 Pa. 87; Quin's Est., 144 Pa. 444.

The intervention or nonintervention of a trustee to hold the

legal title to protect the separate use, is immaterial: Wright v. Brown, 44 Pa. 224; MacConnell v. Lindsay, 131 Pa. 487; Shonk v. Brown, 61 Pa. 320; Richardson v. Aiken, 104 Pa. 567; 2 Perry on Trusts (3d ed.), sec. 647.

The rule in Pennsylvania, before and since the acts of 1848, 1887 and 1893, respecting real or personal estate held by or for a married woman to her sole and separate use, with or without a trustee, is, that neither she nor her husband, nor both together, can transfer, convey or mortgage it during the lifetime of her husband, unless the power to do so is expressly given by the instrument under which she acquired her title: Lancaster v. Dolan, 1 Rawle, 231; Maurer's Appeal, 86 Pa. 380; Wright v. Brown, 44 Pa. 224; Penna. Co. for Ins. on Lives v. Foster, 35 Pa. 134; McMullin v. Beatty, 56 Pa. 394; Shonk v. Brown, 61 Pa. 320; Twining's Appeal, 97 Pa. 36; MacConnell v. Lindsay, 131 Pa. 476; Shalters v. Ladd, 141 Pa. 349; Quin's Estate, 144 Pa. 444; Hays v. Leonard, 155 Pa. 474; Wilbert's Estate, 166 Pa. 113; 2 Perry on Trusts (3d ed.), sec 655.

*Thomas Patterson,* with him *Kirk Q. Bigham,* for appellee. —The legal title to the real estate passed to the executors, as such, for the purpose of sale and distribution of the proceeds among the parties entitled thereto. Whether they are called executors or trustees, the mere designation makes no difference; they are clothed with the legal title for certain purposes which are specified in the instrument creating the trust.

Nor does it make any difference that there are two executors named in the will. Each is as much a trustee, has as much power over the assets, as though acting alone: De Haven v. Williams, 80 Pa. 480; Woods's Appeal, 92 Pa. 379; Fesmire v. Shannon, 143 Pa. 201.

The two positions of trustee and cestui que trust are incompatible: Hahn v. Hutchinson, 159 Pa. 133; Patrick v. Bingaman, 2 Pa. Superior Ct. 113; Chrisman v. Sener, 162 Pa. 577.

Even though the trust were held to be valid, the mortgage in suit is nevertheless good as an exercise of a power clearly given in the trust instrument: Lancaster v. Dolan, 1 Rawle, 237; Chrisman v. Wagoner, 9 Pa. 473; Bailey v. Allegheny Nat. Bank, 104 Pa. 425.

OPINION BY MR. JUSTICE BROWN, January 7, 1901:

If the estate of Jennie Hively, the appellant, was absolute in fee simple in the property which she and her husband undertook to mortgage to the appellee, the judgment entered on the verdict must be affirmed; but if it was a separate use trust, her mortgage was worthless, and the judgment cannot be sustained. She was the daughter of Barbara C. Elsey and the estate which she held came to her under the following clause in her mother's will: "As to my real estate, to wit: the dwelling in which I now reside, I give, devise and bequeath the same to my executors hereinafter named with full power to sell the same as a whole or in parts or lots and to give good and sufficient deed or deeds for the same to the purchaser or purchasers. And I give and devise and bequeath to my son Warren Elsey, the sum of six hundred and twenty-five dollars to be paid to him without interest out of the sum realized from the sale of my real estate. As to the balance of the proceeds after deducting said sum, I give, devise and bequeath the same to my daughter, Jane Hively, wife of Harry Hively, for her sole and separate use independently of her present or any future husband the full one half of the balance." The executors did not sell the real estate, but the son and daughter made an amicable partition of it, and that part taken by the appellant was mortgaged to the appellee.

The words of the will so clearly create a separate use trust for the daughter, a feme covert at the time of its execution, and still continuing so, that no one of the many cases from Lancaster v. Dolan, 1 Rawle, 231, down to Wilbert's Estate, 166 Pa. 113, need be cited to declare what they mean. The intention of the mother was to give the daughter an estate for her enjoyment, free from any dominion over it by the husband, safe from his improvidence or importunities and with no power in either of them or both together, to dispose of it during the coverture of the wife, and the very words that should have been used, were adopted in creating and giving it. If the testatrix so intended that her daughter should have only a separate use, her intention could not be defeated by the act of her children in dividing her real estate between them, instead of the proceeds of a sale of it by the executors. If these children, who are the executors, had sold the property, the daughter's

share would have been "for her sole and separate use, independently of her present or any future husband," and, though personalty, would have been a separate use trust: Penna. Co. for Ins. on Lives v. Foster, 35 Pa. 134; Megargee v. Naglee, 64 Pa. 216; Bailey v. Allegheny Nat. Bank, 104 Pa. 425. Having unequivocally elected, as was her right, to take a portion of the land instead of the proceeds of a sale of it, as her share of the estate, given and devised to her, the interest of the daughter in the mother's estate from the time her election was exercised, became land: Brownfield v. Mackey, 27 Pa. 320; Evans's App., 63 Pa. 183; Bailey v. Allegheny Nat. Bank, 104 Pa. 425; Howell v. Mellon, 189 Pa. 169; but the interest continued to be only such as had been given by the will of the mother. No absolute estate in fee simple had passed to the daughter under that instrument, and in the face of its plain and express terms no act of hers could enlarge the separate use trust created for her support, and not for her alienation. If she had the power to convey or mortgage, it must be found in the will, either in express terms or by implication, and if it cannot be there found, it did not exist when she executed the mortgage to the appellee. It is hardly required of us to cite a single one of our many deliverances in support of this, and in passing we need do no more than call attention to the following from Quin's Estate, 144 Pa. 444: "It must be observed that the general doctrine upon which this separate estate of the wife rests in this state and the other states named, is essentially different from that prevailing in England. It is peculiar; its peculiarity, as we said in MacConnell v. Lindsay, 131 Pa. 476, being founded on the particular purpose intended to be accomplished. In England and in many of the states, the rule, as we have said, is to treat the wife as the absolute owner, possessing the jus disponendi and the incidental power of charging the estate with her debts, as if she were a feme sole; whereas in Pennsylvania, this estate in equity was intended, through her disabilities, to protect the feme covert not only from her own improvidence, but also from the improvidence and importunity of her husband. As early as 1829, in the case of Lancaster v. Dolan, 1 Rawle, 231, it was distinctly held that a feme covert is, in respect to her separate estate, to be deemed a feme sole only to the extent of the powers clearly given by the instrument by

which the estate is settled, and that she had no right of disposition beyond that. 'Instead of holding the wife to be a feme sole to all intents as regards her separate estate,' says Chief Justice GIBSON in that case, 'she ought to be deemed so only to the extent of the powers clearly given in the conveyance; and that instead of maintaining that she has an absolute right of disposition, unless she is expressly restrained, the converse of the proposition ought to be established, that she has no power but what is expressly given.' This case was followed by Thomas v. Folwell, 2 Wharton, 11, where it was declared to be the settled law of Pennsylvania that a married woman possesses no power, in respect of her separate estate, but what is positively given or reserved to her in the instrument by which the trust is created. That this was an intentional departure from the known English rule, is apparent from the language of Chief Justice GIBSON, who, in delivering the opinion of the court, said: 'Why is a settlement ever made? Certainly to exclude the husband's control. But, to exclude his direct control, which consists in the exercise of legal power, and yet leave him the means of giving the effect to indirect control, which consists in the exercise of personal influence, is to do nothing. We daily see the incompatibility of the wife's protection with the qualified power of alienation given her by our statutes; and the English chancery reports show that the same mischief has ensued from the alienations allowed her under deeds of settlement, by reason of which what would otherwise have kept the wolf from the door has been wasted or pirated by the husband. We therefore hold it to be the settled law of Pennsylvania that, instead of her having every power for which she is not negatively debarred in the conveyance, she shall be deemed to have none except what is positively given or reserved to her.' The rule declared in Lancaster v. Dolan has been steadily adhered to in a long line of cases, too long to justify a reference to all of them here. The following cases, however, may be cited: Dorrance v. Scott, 3 Wharton, 309; Wallace v. Coston, 9 Whart. 137; Stahl v. Crouse, 1 Pa. 111; Rogers v. Smith, 4 Pa. 93; Penna. Co. v. Foster, 35 Pa. 134; Wright v. Brown, 44 Pa. 224; McMullin v. Beatty, 56 Pa. 389; MacConnell v. Lindsay, 131 Pa. 476. If anything in the law may be regarded

as settled, it is that a feme covert, as to her separate estate, has no power of disposition beyond what is conferred upon her in the instrument creating the trust."

No jus disponendi in the appellant is given by the will of her mother, and Bailey v. Allegheny Nat. Bank, 104 Pa. 425, cannot be relied upon by the appellee as holding that she had such power.  In that case the testator, in creating a separate use trust, declared that the shares of his children should belong to them separately and exclusively, whose receipts therefor should be taken as a full discharge to his executors, and it was held that there was a general power of disposal by implication; but there are no words in the will before us from which such power can be implied.

This is not a spendthrift trust in which the trustee is also the cestui que trust with absolute ownership of the subject of the trust, and it does not fall, as is urged by counsel for the appellee, because a trustee is not named for the cestui que trust.  So well is this settled that we need not discuss it: Wright v. Brown, 44 Pa. 224; Reiff and Umstead's App., 60 Pa. 361; Shonk v. Brown, 61 Pa. 320; Richardson v. Aiken, 104 Pa. 567; MacConnell v. Lindsay, 131 Pa. 476.

The learned trial judge seemed to think, as we read his opinion refusing a new trial, that under the statutes relating to married women the estate of the appellant was under her absolute control, for he says: " She was to receive the money without restriction or condition except that it was for her sole and separate use, independent of her husband.   That was only what the statutes secure to her, and therefore had no effect.   She would take the money with absolute control over it and do what she pleased with it."   The acts of 1848 and 1893 in removing the disabilities of married women have no application to the construction of instruments creating separate use trusts. Legislation has not affected them, and in equity the intention of settlors, donors and testators still will and ought to be carried out.   Disabilities of married women may be removed, power over their own separate estates may be given to them, but the silence of the statutes, as to separate use trusts created for them, will continue to be prohibition; and the time ought never to come when they can burst the bonds placed upon them by

the hands of affection. So bound, provision for their welfare will be safe, and anxious hearts relieved; unfettered, it will be uncertain and at all times in danger of being swept away by dreaded improvidence. The judgment for the plaintiff below is reversed and is now here for the defendants.