ECKERLY *v.* McGHEE.

(*Jackson.* May 2d, 1887.)

MARRIED WOMAN. *Separate estate. Charge by parol contract.*

A *parol* contract, whereby a married woman creates an express charge, for her debt, upon her separate estate, over which she possesses unlimited power of disposition, is enforcible in equity against her separate *realty*, although the debt may not have been created for the benefit or enlargement of her separate estate.

Cases cited and approved: Warren *v.* Freeman, *ante*, p. 513; Jordan *v.* Keeble, *ante*, p. 412; Menees *v.* Johnson, 12 Lea, 561; Ragsdale v. Gossett, 2 Lea, 736.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. W. McDowell, Ch.

Bill to enforce against the separate realty of a married woman an express *charge* for her debt created by her *parol* contract.

M. M. Randolph for Eckerly.

W. D. Wilkerson for McGhee.

FOLKES, J. This case presents squarely the question, Can a married woman possessed of a separate estate in personalty and realty make a valid

*parol* engagement to bind and charge her separate estate, which will be enforced in equity against the realty so held, independent of any considerations of benefit or enlargement of her separate estate?

So far as we are informed, the question, as here put, has never in terms been adjudged in this State.

We have, however, adjudications on the general subject of charging the separate estate of married women, by the light of which we are enabled to answer in the affirmative.

To charge her separate estate in equity, where she has clearly and explicitly (for in this State implication will not suffice) agreed and contracted that it shall be bound, is not to fix a *lien* or incumbrance upon the property.

There is nothing in the mere act of *writing* to charge her estate. If so, in every case there would have to be a description of the property and privy examination. That privy examination is not necessary is expressly determined in *Menees* v. *Johnson*, 12 Lea; and again in *Warren* v. *Freeman*, 1 Pickle, p. 513.

In the latter case Judge Caldwell, speaking for the Court, says:

"Any contract which will authorize a court of equity to subject her separate *personal* property will warrant the subjection of her *lands* held to the same uses, and a privy examination or authentication for registration is no more necessary in the

Eckerly *v.* McGhee.

one case than in the other, and is not required in either."

In that case the charge was stipulated in the face of the note, but for goods furnished some time before the execution thereof, with no description of the property and no acknowledgment, which facts were deemed unimportant to the conclusions there reached.

In *Owens* v. *Dickinson*, Cr. & Ph., 48, 54, Lord Cottenham says:

"The mistaken notion that the wife's contract creates an equitable *lien* or distinct charge upon her separate property is to be found in some of the American decisions, but is wholly rejected by others. This notion is utterly inconsistent with the well-settled rules concerning the extent of the liability and its enforcement. If there were a lien, it would follow the property into the hands of purchasers with notice from the wife."

Again he says, in the same case:

"The view taken of the matter by Lord Thurlow in *Hulme* v. *Tenant* is correct. According to that view, the separate property of a married woman being a creature of equity, it follows that, if she has the power to deal with it, she has the other power incident to property in general—the power of contracting debts to be paid out of it; and inasmuch as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of

the separate property as the only means by which they can be satisfied."

What has been so often said in the books about the exclusion of parol proof of an agreement or undertaking to charge a married woman's separate estate will be found to rest entirely upon one or the other of two grounds, viz.:

*First*—Where the *evidence of the debt* or contract was itself in writing. Of course, in such cases, to admit parol proof to show an agreement or engagement that the separate estate was to be charged with the debt or contract would contravene the elementary rule of evidence, which excludes parol proof offered to alter or enlarge the writing entered into by the parties. Such were the cases of *Ragsdale* v. *Gossett*, 2 Lea, 736; and *Jordan* v. *Keeble*, 1 Pickle, p. 412, and others that might be cited.

*Second*—Where the instrument creating the separate estate, in terms or by necessary implication, limits the *power* of disposition in such manner as to negative the idea of a parol charge.

The restraint upon anticipation, when inserted in the instrument creating the separate estate, applies to the wife's contracts, or, more properly speaking, *engagements*, as well as to her *alienations*. The separate property, therefore, which she holds subject to the restraint upon alienation or anticipation, is not liable for any contracts or engagements which she may make. 3 Pomeroy's Eq., Section 1123; *Pike* v. *Fitzgibbon*, L. R., 17 Ch. D., 454, 459, 462, 463.

We do not believe any case can be found in our State where parol proof has been rejected or held insufficient that is not bottomed on one or the other of the propositions just stated.

We conclude, therefore, that all that is necessary to charge the separate estate of a married woman with her engagements, whether oral or written, is that there must be an express promise or engagement to create such charge, and that the method in which such engagement is expressed or created must be within the express or necessarily implied *powers* of the instrument creating the estate.

In the case at bar the express parol contract or agreement to charge her estate is explicit in its terms, and clearly proven. And there is nothing in the terms of the instrument creating the separate estate which imposes, directly or indirectly, any restriction upon the power or manner of disposition.

The instrument creating the separate estate embraced both personal and real property, both of which were in being at the time the contract or engagement was made, and both alike referred to in the agreement.

As we have seen, there was no *lien* upon either, nothing to prevent the married woman from subsequently incumbering either or both, or from disposing of any part or all of either.

The realty alone remains, or at least is alone sought to be subjected here. Whatever portion of the property that remains, real or personal, which

she held at the time of entering into the engagement, and is included in the bill as filed (and not the married woman, nor any particular piece of her separate estate), *is the debtor* in the equity proceedings to subject the same.

That she may be overreached by false swearing of the party with whom she trades is no sufficient objection to holding a married woman's separate property bound. In this respect her *property* is in no more jeopardy than is the property and *life* of men, nor of women (if sex is to be considered), who are *femme sole,* holding a general estate. The latter are as liable to be made the victims of perjury as the former.

This is inherent in the administration of justice, and the danger is more imaginary than real; for, with an opportunity of being a witness in reply, with all the varied tests of truth to be applied under the rules of evidence and of practice, the danger suggested is reduced to a minimum, and is shared in by all in every relation of life.

Again, where is the warrant of law for demanding that such engagements as we are now considering shall be in writing? For the courts to require it now would seem very like an encroachment upon the province of the Legislature.

Her undertaking is a contract only *sub modo;* it is only an equitable obligation, which courts of equity enforce alone against her property; and the courts which *enforce* will be as careful to *protect.*

We are unable to discover any rule of law or

any considerations of public policy that would require a *higher order of evidence* to charge the *property* of a married woman than is sufficient to bind the person and the property of an unmarried woman, husband's influence and domination out of the way. Indeed, she is an unmarried woman as to her separate property in the character of cases we are considering.

We have examined Mr. Pomeroy's excellent work on equity jurisprudence, and in his very full discussion of the subject of charging the separate estate of married women we find nothing militating against the views here expressed, while in Bispham's Principles of Equity, Section 102, we find this language in reference thereto:

"This liability was at first supposed to exist only when the *femme* had executed some obligation under seal; but the courts have now reached the conclusion that the same liability exists in respect of a mere verbal engagement." Citing in note *Pickard* v. *Hine*, L. R., 5 Chan., 274; *Johnson* v. *Gallagher*, 3 DeG., F. & J., 494; *London Bank of Australia* v. *Lempiere*, 4 Priv. Coun. App., 572; *Murray* v. *Barlee*, 3 M. & K., 209; Matthewman's Case, L. R., 3 Eq., 781; *Shattock* v. *Shattock*, L. R., 2 Eq., 182, which cases we have not now the means of examining, but doubt not they will be found to sustain the text of the learned author.

Let the decree be affirmed with costs.

Turney, C. J., delivered a dissenting opinion.