## WEBSTER *v* HELM.

### (*Nashville.*    January 6, 1894.)

1. MARRIED WOMAN.    *Power to charge her equitable separate estate.*

   A married woman having unlimited power of disposition may, as surety
   on a promissory note, bind and charge her equitable separate estate
   with its payment by express contract to that effect therein contained.
   (*Post, pp. 323–327.*)

   Cases cited and approved: 22 'Wall., 337; 15 Vesey, 596; L. R., 6
   Ch. Div., 166; *Ib.*, 728; 2 Atkyn, 68; 1 L. C. E. (W. & T.), *394.

   Cited and distinguished: Embry & Frierson *v.* Hodge, MS., Nashville,
   1879; Maberry *v.* Neely, 5 Hum., 337; Chatterton *v.* Young, 2 Tenn.
   Ch. 772; Arrington *v.* Roper, 3 Tenn. Ch., 572; McClure *v.* Harris,
   7 Heis., 379; Robertson *v.* Wilburn, 1 Lea, 633.

2. SAME.    *Same.*

   And her power of disposition is unlimited, and consequently her power
   to charge her separate estate by express contract is absolute, when
   the instrument under which she derives title contains no restrictions
   upon her power.    (*Post, pp. 323–327.*)

   Cases cited and approved: Young *v.* Young, 7 Cold., 461; Parker *v.*
   Parker, 4 Lea, 392; Lightfoot *v.* Bass, 8 Lea, 350; Grotenkemper
   *v.* Carver, 9 Lea, 281; Scobey *v.* Waters, 10 Lea, 551; Menees *v.*
   Johnson, 12 Lea, 563; Steifel *v.* Clark, 9 Bax., 470; Williams *v.*
   Whiteman, MS., Jackson, 1875; Lytton *v.* Baldwin, 8 Hum., 210;
   Cherry *v.* Clements, 10 Hum., 552; Kirby *v.* Miller, 4 Cold., 3;
   Shacklett *v.* Polk, 4 Heis., 115; Ragsdale *v.* Gossett, 2 Lea, 736;
   Jordan *v.* Keeble, 85 Tenn., 412; Warren *v.* Freeman, 85 Tenn.,
   513; Eckerly *v.* McGhee, 85 Tenn., 661.

3. SAME.    *Same.*

   And it is not material that she owns only a life estate and not the fee.
   (*Post, p. 328.*)

   Cases cited and approved: 17 Vesey, 365; 2 Beavan, 245; 1 L. C. E.
   (W. & T.), *394.

4. SAME.   *Same.*

And privy examination is not essential to her contract to charge her equitable separate estate.   The contract may be by parol.   (*Post, pp. 327, 328.*)

Code construed: §§ 3347, 3350 (M. & V.); §§ 2486*b*, 2486*c* (T. & S.).

Cases cited and approved: Warren *v.* Freeman, 85 Tenn., 513; Eckerly *v.* McGhee, 85 Tenn., 661; Menees *v.* Johnson, 12 Lea, 561.

---

FROM MAURY.

---

Appeal from Chancery Court of Maury County. A. J. ABERNATHY, Ch.

W. J. WEBSTER and G. T. HUGHES for Webster.

FIGUERS & PADGETT for Helm.

CALDWELL, J.   De Helm purchased two cows from H. P. Webster, at the price of $160, for which he and his father and mother executed a promissory note, in the words and figures following:

" $160.00            COLUMBIA, TENN., Sept. 26, 1892.

" Six months after date we promise to pay to the order of H. P. Webster one hundred and sixty dollars, with interest from date, and the undersigned, Ella Helm, hereby binds and charges her separate estate, both real and personal, especially with the payment of this note.

"[Signed]      DE HELM,

"D. C. HELM, *Security*,

"ELLA HELM, *Security*."

Mrs. Ella Helm, the mother, then owned, and now owns, a life estate in a certain valuable house and lot in the town of Columbia, Tennessee, the same having been devised to her by her father to her sole and separate use, without limitation or restriction upon her power of alienation.

The note being past due and unpaid, H. P. Webster, for the use of Maury National Bank, to which he had transferred it as collateral security, filed the bill in this cause against Mrs. Ella Helm and her husband, to enforce its collection by a sale of her interest in said house and lot.

The ground of the relief sought, as stated in the bill, is that Mrs. Helm, by the terms of the said note, specially bound and charged her separate estate with its payment.

Mrs. Helm, answering with her husband, admitted the execution of the note and her ownership of a separate estate as herein stated, but she pleaded her coverture as a bar to any recovery against her personally, and denied that her agreement in the face of the note, to bind and charge her separate estate was of any force or validity, the note being, as to her, a mere surety obligation, assumed without any benefit to her or to her said estate.

The Chancellor adjudged the separate estate liable, and decreed that it be sold for the payment of the debt. Mrs. Helm appealed.

"The separate property of married women may be classified into the equitable and the statutory, the former being that recognized by Courts of

Equity irrespective of statutes, the latter that recognized and created by those statutes which limit the common law rights of the husband in his wife's property, and which enlarge the rights of the wife." 22 Am. & Eng. Ency. of Law, 2, 3.

In this State it is equitable, and not statutory. Therefore, the separate estate of Mrs. Helm belongs to the equitable class, and is subject alone to the rules applicable thereto; and what shall hereafter be said in this opinion will relate exclusively to that class, without calling it by its distinctive name.

With respect to the power of a married woman over her separate estate, there has been great diversity of judicial opinion, both in England and in America. In one of the two principal classes of cases, it has been held that she has no power of disposition, except that clearly given by the terms of the instrument creating the estate; while in the other, the ruling has been that she has every power of disposition, except such as may have been withheld expressly or by necessary implication. After some fluctuation, the latter is now the prevailing doctrine in Tennessee, as it is in England, where the wife's separate estate had its origin. 3 Pom. Eq. Jur., 1104; Adams' Equity, *45; *Young* v. *Young*, 7 Cold., 461; *Parker* v. *Parker*, 4 Lea, 392; *Lightfoot* v. *Bass*, 8 Lea, 350; *Grotenkemper* v. *Carver*, 9 Lea, 281; *Scobey* v. *Waters*, 10 Lea, 551; *Menees* v. *Johnson*, 12 Lea, 563.

A person conveying or devising property to a married woman, to her sole and separate use, may

give her full power of disposition by using affirmative words to that effect, or by mere silence. If, in the settlement, he says nothing on the subject, he is presumed to have intended that she be not limited or restrained in disposing of the property. A settlement without limitation or restriction, therefore, carries with it unlimited power of disposition. Unlimited power of disposition, whether arising from express terms of the instrument creating the separate estate or from the absence of restrictive words, includes unlimited power to charge. *Williams* v. *Whiteman*, MS., Jackson, 1875; *Steifel* v. *Clark*, 9 Bax., 470, 471.

This seems as obvious as that the whole includes all of its parts.

With unlimited power of disposition, the married woman may dispose of her separate estate for any purpose she may choose—for her own benefit or for the benefit of another person; and, since unlimited power of disposition includes unlimited power to charge, as the greater includes the lesser, she may likewise charge it with the payment of any debt or engagement she may make, whether as principal, for her own benefit or that of her estate, or as surety for the benefit of another.

This must be so; for if she can dispose of or charge her property for but one purpose, or for particular purposes only, then her power of disposition or to charge is not unlimited, but limited. To be unlimited, the power must include every disposition and every charge made with appropriate formality.

The validity of a married woman's sale of her separate estate depends, first, upon her power to make the sale, and, secondly, upon the mode in which it was made—not upon the purpose for which she disposed of the property, nor upon the use to which she put the purchase-money. The latter matters are important only when made so by the terms of the settlement.

The same is true as to a charge upon her separate estate. Its validity depends upon her power to make the charge and the manner in which it was done, rather than upon her relation to the debt as principal or as surety.

If it be found in a given case, that her power of disposition was unlimited, and that her deed or her charge has been made according to the forms of law, then a Court of Equity will enforce her contract according to its terms.

It is well settled in this State that a married woman, owning a separate estate, without limitation or restriction upon her power of alienation, may charge that estate " with her contracts or engagements" by an *express agreement* to that effect. *Lytton* v. *Baldwin*, 8 Hum., 210; *Cherry* v. *Clements*, 10 Hum., 552; *Miller* v. *Kirby*, 4 Cold., 3; *Shacklett* v. *Polk*, 4 Heis., 115; *Ragsdale* v. *Gossett*, 2 Lea, 736; *Jordan* v. *Keeble*, 85 Tenn., 412.

That agreement is sufficient, and will be enforced in a Court of Equity, not as a lien, but as a mere charge, if contained in the face of a promissory note executed by the married woman (*Warren* v.

*Freeman*, 85 Tenn., 513); or, if in parol, the whole contract or engagement being in parol. *Eckerly* v. *McGhee*, 85 Tenn., 661. Privy examination is not essential to the efficacy of such an agreement. *Menees* v. *Johnson*, 12 Lea, 561.

In England and some of the States, the intention to make the charge may be inferred; here it must be distinctly expressed as a part of the contract.

The will under which Mrs. Helm holds the property here in question, imposed no limitation or restriction upon her power of disposition; hence, under the rule heretofore stated as now prevailing in this State, her power of disposition was unlimited.

Having unlimited power of disposition, she also had, as an essential part of that power, unlimited authority to charge such property with any contract or engagement she might make, whether it be for her own advantage, or merely as surety for her son; and, having exercised that authority in a legally recognized mode—that is, by an *express agreement* in the face of the note—the charge is valid and should be enforced.

That she owns only a life estate in the property, and not the fee, makes no difference. The charge is good to the extent of her interest. *Bullpin* v. *Clarke*, 17 Vesey, 365; *Stead* v. *Nelson*, 2 Beavan, 245; *Huline* v. *Tenant*, 1 Leading Cases in Equity (White & Tudor), *394 and note.

Until now, this Court has not held that a *feme*

·*covert*, without express authority to that end, may charge her separate estate with the payment of a debt to which her relation is one of suretyship merely; nevertheless, we think such is the plain logic and necessary result of the settled ruling that her power of disposition is unlimited when the instrument under which she claims the property contains no limitation or restriction upon that power. In that sense, and to that extent, the cases establishing that rule are authority for the decision made in this case.

The unreported case of *Embry & Frierson* v. *J. H. Hoge and wife*, decided by this Court at this place, December term, 1879, is cited and relied on by counsel of Mrs. Helm as· an authority precisely in point and directly opposed to the decision made herein. The Court, in that case, after stating the facts of the record, said: "The question then is, had she [Mrs. Hoge, the wife] the power to charge her separate estate for the payment of a se- curity debt of her husband, by the simple execution of a promissory note with this stipulation upon its face?" In answering that question, the Court, upon elaborate consideration of the provisions of the in- strument creating the separate estate, held that they repelled "the idea that the grantor intended that the estate should in this mode be made subject to the husband's debts;" and, after so holding, the Court added: "Besides, the weight of authority probably is, that where the power to charge the estate is expressly given, the married woman can only charge

it for her own benefit or for the improvement of the estate. See *Maberry* v. *Neely*, 5 Hum., 337, and the authorities cited by Judge Cooper in *Chatterton* v. *Young*, 2 Tenn. Chy., 772."

It is readily seen that the *decision* in that case was put upon the ground, that Mrs. Hoge's power was so restricted by the terms of the settlement that she could not charge her separate estate with her husband's debts. As to what she might have done in that regard had her power of disposition been unlimited, as in this case, the Court did not *decide*, and could not have *decided*, but only expressed the opinion that "the weight of authority probably" was that the married woman, in such a case, could only charge her separate estate "for her own benefit or for the improvement of the estate."

In the case of *Maberry* v. *Neely*, 5 Hum., 337, the married woman's separate estate was held not to be bound for the payment of bills single, upon the ground, as stated in the opinion, that "she became a party to them as surety for Lee and for her husband, and for no beneficial object or contract of her own." But it did not appear in that case that she had expressly agreed in the bills single to charge her separate estate with their payment; hence, the Court did not there consider, and could not have decided, what the effect of such an agreement would have been.

In *Chatterton* v. *Young*, 2 Tenn. Chy., 771, it was decided that the notes there involved were not

a charge upon the separate estate of the married woman, because it did not appear that they were signed by her, and, further, because they did not contain an express stipulation charging such estate.

In *Arrington* v. *Roper*, 3 Tenn. Chy., 572, the married woman's express stipulation to bind her separate estate for debts of her husband, was held to be invalid, because the deeds under which she received the property authorized her to dispose of it for re-investment *only*, thereby excluding her right to make such a charge.

It is true that in each of the last two cases, the learned Judge Cooper, who decided them, expressed the opinion that the better authorities denied the power of the wife to charge her separate estate with debt for which she was surety of her husband (2 Tenn. Chy., 772; 3 Tenn. Chy., 574, 575), but that expression of opinion could not have been, and was not intended as an adjudication of the question.

No more was the question raised, or decided, in *McClure* v. *Harris*, 7 Heis., 379, or in *Robertson* v. *Wilburn*, 1 Lea, 633, for in neither of those cases had the wife agreed to charge her separate estate.

Such are the Tennessee cases which may have been supposed to reflect, in some measure, upon the power of a married woman to charge her separate estate with security debts. A brief review of them shows that they do not decide the question.

It is not deemed essential or important to cite or review the conflicting decisions of other Courts

upon this subject, or to determine upon which side of the question a majority of the adjudged cases are found. It is sufficient to say, that we are convinced that the preponderance of authority and the weight of reason are in favor of the proposition that the charge may be made when the wife's power of disposition is unlimited, as in the case now before us. That has long been the settled rule in England. There the separate estate of a *feme covert* was subjected to the payment of her bond, *as surety*, in *Heartley* v. *Thomas*, 15 Vesey, 596; of her *guaranty* for the price of goods sold to her husband, in *Morrell* v. *Cowan*, L. R., 6 Ch. Div., 166; of the joint and several note of husband and wife for money loaned to them, in *Davies* v. *Jenkins, Ib.*, 728; of their joint bond for money loaned to him, in *Stanford* v. *Marshall*, 2 Atkyn, 68; of their joint bonds, one for money loaned to him and the other for money loaned to her, in *Huline* v. *Tenant*, 1 L. C. E. (W. & T.), * 394.

In *Stephen* v. *Beall*, 22 Wallace, 337, the defense was, that it was not competent for a married woman to incumber her separate property to secure the debts of her husband. Responding to that question, the Supreme Court of the United States, said: "The doctrine that a married woman has the power to charge her separate estate with the payment of her husband's debts, or any other debt contracted by her as principal or as surety, has been uniformly sustained for a long period of time."

Mr. Pomeroy mentions three "general types" of

American cases involving the question of a married woman's power to charge her separate estate with her contracts of suretyship. He says that in the first of those types, including comparatively few States, she has not that power, but that in the second and third, embracing a majority of the States, she has the power and may make it effective by *express stipulation.* 3 Pom. Eq. Jur., Sec. 1126. It is also said, in 14 Am. & Eng. Ency. of Law, 626, and in 22 *Ib.*, 12 and 13, that such power exists in most of the States.

The third section of Chapter 99, Acts of 1869–70 (Code, T. & S., 2486*c*; M. & V., 3350) is not applicable in this case, because there was no privy examination of Mrs. Helm, as required by the second section (Code, T. & S., 2486*b*; M. & V., 3347) of that Act.

Affirmed.