. BANK v. JAMES.

(*Jackson.*    May 2, 1895.)

. 1. MARRIED WOMAN.    *Power to charge separate estate.*

A married woman, having separate estate, has power to charge it with debts, unless restrained by the instrument of settlement. This power, though not denied in express terms, cannot exist if its exercise would defeat the manifest purpose and intent of the instrument of settlement. (*Post, p. 15.*)

Cases cited and approved: Webster *v.* Helm, 93 Tenn., 322; Young *v.* Young, 7 Cold., 461; Ragsdale *v.* Gossett, 2 Lea, 730; Eckerly *v.* McGhee, 85 Tenn., 661; Arrington *v.* Roper, 3 Tenn. Ch., 572.

2. SAME.    *Same.    Example.*

A married woman cannot charge with debts, either the corpus of her separate estate, or, by anticipation and before reduction to possession, the rents and income thereof, when the corpus is held for her separate use, and free from her husband's debts, by a trustee, under a deed that gives him sole management and control thereof, with power to collect the rents and income and apply same, first, to taxes and repairs, and then pay over the excess to her for her separate use, although she is authorized by the deed to appoint a new trustee in case of vacancy, and to sell the corpus, but, in case of sale, the proceeds to be collected by the trustee and reinvested by him for her like separate use. (*Post, pp. 10-17.*)

Cases cited: Bottoms *v.* Corley, 5 Heis., 1; Davis *v.* Williams, 85 Tenn., 650; Vick *v.* Gower, 92 Tenn., 391.

3. SEPARATE ESTATE.    *Frame of bill to charge.*

A bill seeking to charge a married woman's separate estate with her debts must aver a *prima facie* case of a separate estate

and of a power to charge it, and of intention and agreement upon her part to make such charge. (*Post, pp. 14, 15.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

WATSON & FITZHUGH for Bank.

METCALF & WALKER for James.

WILKES, J. The bill in this cause was filed by the Bank of Shelby to subject the separate property of Ellen C. James, wife of C. B. James, to the payment of a note for $10,000.

The bill was demurred to, and demurrer sustained, and complainant has appealed and assigned errors, only one of which need be noticed.

The allegations of the bill are substantially as follows: That on August 12, 1893, complainant, under its then name of "Shelby County Savings Bank," loaned to the said Chas. B. James and Ellen C. James, his wife, the sum of $10,000, for which they made and delivered to complainant their promissory note for said sum of $10,000, falling due twelve months after date; that in the making of said loan, and the taking of said note, the credit was extended to the said Ellen C. James on the

faith of her separate property; that the said Ellen C. James was a married woman owning a separate estate, and that in the execution of said note she contracted with reference to her said separate estate; and, in order to bind the same and make it liable for said note, she signed the following indorsement, which appears on the face of said note, to wit: "I hereby bind my separate estate for the payment of this note."

A copy of said note and indorsement is filed as an exhibit to said bill of complainant.

Defendants also delivered to complainant, as collateral security for said debt, certain stock in the Keely Institute of Tennessee, which, however, proved to be of little or no value.

On May 20, 1876, the defendant, Ellen C. James, as devisee under the will of her father, Geo. P. Cooper, was the owner of a considerable amount of real estate lying in Shelby County, Tenn., all of which is described in the bill. And on said day her husband united with her in the execution of a deed conveying all of said property—except certain lots on Adams Street, in the city of Memphis—to one J. M. James, as trustee, on the following trusts and conditions, to wit:

"Said trustee is to hold said property in trust for the sole and separate use of the said Ellen C. James, free from the control, contracts, and debts of the said C. B. James, and the said trustee is to take the sole management and control of said

property, and to collect and receive all the income and rents therefrom; pay all taxes thereon, and see that the same is kept in good repair, and to pay over the net income from said property to the said Ellen C. James for her sole and separate use, free from the control, debts, and contracts of her said husband, C. B. James. It is also understood that the said Ellen C. James shall have full power to dispose of said property by deed or will the same as if she were a *feme sole;* and should the said Ellen C. James at any time desire to sell any of said property, then the said trustee, at her request, is to unite with her in a deed to the purchaser, and the proceeds of sale to be paid over to the said trustee, and by him reinvested in any manner suggested by the said Ellen C. James, subject to the same trusts as set forth in this conveyance. Should the said C. B. James die before the said Ellen C. James, then this trust created by this conveyance is to cease and end, and the property held by said trustee under and by virtue of this conveyance is to be by him reconveyed to the said Ellen C. James. In case of the death or resignation of the said J. M. James, the said Ellen C. James shall have power, by deed executed by her alone, to appoint another trustee in the room and stead of the said J. M. James; and the said trustee, when so appointed, shall be invested with the title hereby conveyed in said property, with all the

powers, privileges, and exemptions as possessed by the said J. M. James in this conveyance."

Said trust deed also stipulates that if the said Ellen C. James should die first, the marital rights of the said C. B. James should attach to said property.

In his bill complainant further alleges that the said J. M. James resigned the said trusteeship a number of years ago; that the said Ellen C. James appointed Mrs. Ellen C. Glenn trustee in his place on the twenty-fifth day of April, 1885, and that the said Ellen C. Glenn died on the fifteenth day of December, 1888, since which time the said trusteeship has been vacant, and the said Ellen C. James and her husband have had the entire management and control of said property, renting it out and collecting the rents as fully and to the same extent as if said trust deed had not been executed. Complainant charges that the net income from said property is liable in equity to be subjected to the payment of said note, which fell due on the twelfth day of August, 1894, and remains unpaid; that the said C. B. James is insolvent, and has no property subject to execution, and that the said property brings in an annual rental of from .$2,500 to $3,000; that the said note for $10,000 stipulates on its face that, in case of litigation, all Court expenses and attorney's fees shall be paid by the makers thereof. Complainant prays for the appointment of a receiver to take charge of the property covered by said

trust deed, and rent the same out and receive and collect the rents arising therefrom, and hold the same subject to the orders of the Court; that a writ of injunction issue restraining the said defendants from receiving and collecting the said rents, and also restraining the tenants now in possession of said trust property from paying said rents, or any portion thereof, to the said defendants, or either of them, and that, on final hearing, a decree might be entered in the cause for the amount due complainants on said note—principal, interest, and attorney's fees—and a suitable person appointed to act as trustee or receiver in the place of said Ellen C. Glenn,• deceased, and the said trustee so appointed, bound by a proper decree in the premises, to apply the net income arising from said trust property to the payment of the amount decreed to be due complainant; and that the said Adams Street property be also subjected to its payment, and decreed to be sold for that purpose.

The only ground of demurrer necessary to be considered is that, under the terms and conditions imposed on the wife's property, she had no power to charge either the corpus or income of the same by a note signed by her and her husband.

There can be no question but that, under the deed of settlement executed to J. M. James, trustee, a separate estate was created for Mrs. James, and settled for her benefit; and if her power is not limited in the deed of settlement, the general rule

is that the married woman, as to her separate es-
tate, has legal right to sell or otherwise dispose of
it, or to charge it for debts of her own or a third
person by an express agreement to that effect, and
a privy examination would not be essential to the
efficacy of such agreement. See *Webster* v. *Helm*,
9 Pickle, 322–332, where the cases are collated.

As to the Adams Street property, the only alle-
gations in the bill are that Ellen C. James was, on
May 20, 1876, under the will of her father, the
owner of certain separate estate, describing the Adams
Street lot, as well as the other property afterwards
settled upon her, by the deed conveying it to J.
M. James, trustee.

The will is not set out, and we cannot see whether
the Adams street property was made separate estate
or not, except from the allegation of the bill, and,
if so made, we cannot see whether, as such separa-
rate estate, there were any limitations and restric-
tions upon her power of disposition. It is evident
from the entire bill that all of the other property
passing to her by her father's will was settled, un-
der the instrument, upon J. M. James, trustee, and
thus became separate estate, and the legitimate in-
ference would be that none of the property except
that embraced in the deed to the trustee was sep-
arate property. A separate estate and power to
charge the same will not be inferred from these in-
definite statements in the bill, and, as to this prop-
erty, the demurrer was well taken, there being no

application to amend the bill. The bill should have made out *prima facie* a case of separate estate and a power to charge the same, with the intention and agreement to make such charge upon the part of the married woman.

It only remains to consider the property embraced in the deed to J. M. James, trustee, and see if there is any restriction upon the power of Ellen C. James to dispose of or charge the same by the terms of the said deed.

The Acts of 1869–70, M. & V. Code, §§ 3350, 3347, do not apply to this case, as it is not contended there was any privy examination of the married woman when she signed the note. *Menees* v. *Johnson*, 12 Lea, 561; *Webster* v. *Helm*, 9 Pickle, 333. We are of opinion that the power to charge need not be withheld in express terms by the instrument of settlement if such is its evident intent and purpose considered as a whole. *Young* v. *Young*, 7 Cold., 461; *Arrington* v. *Roper*, 3 Tenn. Ch., 572; *Ragsdale* v. *Gossett*, 2 Lea, 730; *Eckerly* v. *McGehee*, 1 Pickle, 661; *Webster* v. *Helm*, 9 Pickle, 322, and case cited of *Emby* v. *Hoge*.

The legal title to this property is not vested in the married woman, but in J. M. James, trustee, and she had no right to sell or charge the property except by his concurrence, and in the manner indicated in the settlement, and for the purposes therein limited. If the power to charge the same be conceded to her alone, it would defeat the whole object

and purpose of the settlement, and render its pro-visions nugatory.

But it is said that, even if this be so as to the corpus of the estate, it is not so as to the rents, profits, and income arising out of the same, and that it is clearly the intent and purpose of the in-strument of settlement to vest in Mrs. James an absolute estate in such rents, profits, and income, and an unlimited power to dispose of, consume, or charge such rents, profits, and income.

The proposition is, that while she might not charge the corpus of the estate, still she would have the right and power to anticipate the income, and charge or dispose of it in advance of its accrual and re-duction into possession.

This would be to accomplish indirectly what she could not do directly, for if she could charge her income a year in advance, she could do so for a number of years extending through the period of her tenancy, thus, in effect, alienating the property so far as its benefits extend. If she can charge her future rents for $100, she may do so for $100,000, and thus destroy all beneficial interest in the property, the very object the settlement had in view being its security and protection and direct payment to her.

As is said in *Bottoms* v. *Cooley*, 5 Heis., 1, it is the usufruct—the profits, rents, and products of real estate—which give value to the separate estate. It is the maintenance to be derived from the crops

or rents and profits that constitute the motive of the settlement, and, without the enjoyment of these, the land would be worthless.

We think that an intention to restrain anticipation of these profits can clearly be gathered from this settlement, and must have the same effect as such restraining intention would have as to the *corpus*. 2 Perry on Trusts, Sec. 670; 1 Beach on Modern Equity, Sec. 187; 3 Pomery on Equity Juris., Sec. 1109.

The cases of *Davis* v. *Williams*, 85 Tenn., 650, and *Vick* v. *Gower*, 92 Tenn., 391, are cases holding that a devise of rents and profits is a devise of the land itself. These cases can have no application to this unless, indeed, they sustain the idea that a want of power to charge the land carries with it a want of power to charge its rents and profits.

We do not mean to be understood as holding that, by the terms of a settlement, power to charge the rents and profits could not be given even in anticipation of their accrual and reduction to possession, even when power to charge the land out of which they issue is withheld, if apt words to express that intention be used; but we hold that, by fair inference and construction of the instrument of settlement in this case, such power is withheld by it. We see no error, therefore, in the decree of the Court below, and, other matters being immaterial, the decree is affirmed, with costs.