M. F. MITCHELL, *Admr.*, v. CHATTANOOGA SAVINGS BANK
*et al.*\*

(*Knoxville.*   September Term, 1912.)

1. SEPARATE ESTATE.  Created by husband's gift of money to
   wife; her power of disposition in lifetime or by will.

A husband, who makes gifts of money to his wife, thereby sur-
   renders all his rights with respect to the funds during cover-
   ture, and creates in her a separate estate in the same, over
   which he has no control, and which she may dispose of in her
   lifetime, or by will. (*Post, pp.* 671, 672.)

·Case cited and approved:  Carpenter v. Franklin, 89 Tenn., 142;
   Snodgrass v. Hyder, 95 Tenn., 575; Barnum v. Le Master, 110
   Tenn., 638.

2. SAME.  Husband's rights, if not cut off, are merely suspended
   during coverture, and again attach after wife's death.

It has been long settled in this State that, in the absence of some
   particular words used in the creation of a separate estate,
   clearly indicating an intention to cut off, after coverture, the
   husband's rights therein, such rights are merely suspended dur-
   ing the period of coverture, and again attach, after the death
   of the wife, to the property so given. (*Post, pp.* 672-674.)

Cases cited and approved:  Hamrico v. Laird, 10 Yerg., 222; Hays
   v. Bright, 11 Heisk., 325.

3. SAME.  Same.  Created by husband's gift of money to wife en-
   titles him to same rights as in other personalty left by intestate
   wife.

Where a husband makes gifts of money to his wife, which become
   her separate estate, his right thereto is only suspended during
   coverture, and unless he cuts off his right of survivorship by a

---

\*As to validity of gift of personality from husband to wife. see ·
note in 69 L. R. A., 355.

clear and distinct expression, his rights, upon the wife's death intestate, are the same as in respect to other personal property left by the wife, and the husband is entitled to administer upon and possess himself of his intestate wife's separate personal estate. (*Post, pp.* 672-676.)

Cases cited and approved: Brown v. Brown, 6 Humph., 127; Loftus v. Penn, 1 Swan, 445.

Cases cited and distinguished: Bárnum v. Le Master, 110 Tenn., 638; Bingham v. Weller, 113 Tenn., 70.

----

FROM HAMILTON.

----

Appeal from the Chancery Court of Hamilton County.—T. M. McConnell, Chancellor.

Allen Hitzfeld and M. F. Mitchell, for complainant.

Williams & Lancaster and Wheeler, Martin & Trimble, for defendants.

----

Mr. Justice Green delivered the opinion of the Court.

The bill in this case was filed by the administrator of Mrs. Arthur E. Vale, to recover from the administrator and distributees of Arthur E. Vale certain personalty, or its value, formerly the property of Mrs. Vale.

During their married life, Mr. Vale gave his wife various sums of money, amounting to several thousand dollars, which she deposited in a bank in Chattanooga,

to her own credit. She died, and Mr. Vale took charge of this money, the bank turning it over to him without question, and no objection was made by any one during Mr. Vale's life. About two years after the death of his wife, Mr. Vale died. He never administered on his wife's estate. After his death, at the instance of Mrs. Vale's relatives, an administrator was appointed for her estate, and this suit is brought by this administrator for the purpose aforesaid.

The case is before us on bill and demurrer. Without undertaking to quote the language of the bill, it is sufficient to say that we find therein direct averment of the gift of this money by the husband to the wife; but we find no averment of any clear or distinct expression of the husband, at the time of this gift or afterward, that he intended to surrender his right of survivorship with respect to his wife's separate estate so created by him.

A demurrer was interposed, which pointed out the absence of an averment of any distinct expression on the part of the husband indicating an intention to cut off his right of survivorship respecting this money, and the demurrer was sustained by the chancellor. Complainant has appealed to this court.

Complainant insists, regardless of any definite expression in a gift of personalty from a husband to his wife, indicating that he intended to part with his right to administer upon and appropriate the personalty so given at her death, that by force of the gift itself he should be held to have parted with his entire *jus mariti*

in the subject of the gift, his rights during coverture, and his rights after coverture.

He certainly, by such gifts, surrendered all his rights with respect to the funds during coverture, and created a separate estate in same in his wife. *Barnum* v. *Le Master,* 110 Tenn., 638, 75 S. W., 1045, 69 L. R. A., 353; *Snodgrass* v. *Hyder,* 95 Tenn., 575, 32 S. W., 764; *Carpenter* v. *Franklin,* 89 Tenn., 142, 14 S. W., 484.

It has, however, long been the settled law in Tennessee that, in the absence of some particular words used in the creation of a separate estate indicating clearly an intention to cut off after coverture the husband's rights therein, such rights are held to be suspended merely during the period of coverture, and again attach after the death of his wife to the property so given her.

In the case of *Hamrico* v. *Laird,* 10 Yerg., 222, a marriage contract was executed between the parties, in which the intending husband agreed to relinquish all claims he had, or ever could have, to the property therein settled to the separate use of his wife. It was held that the agreement to release all interest the husband ever could have to this property cut off his marital rights entirely.

In *Brown* v. *Brown,* 6 Humph., 127, though, it was said:

"By marriage, the sole and absolute property of the wife's chattels vests in the husband, and if there be a marriage contract, whereby this right is abridged, it is taken away only to the extent stipulated in the settlement. When the settlement makes no disposition of the

property in the event of the wife's death, and provides only for her dominion over it during coverture, the right of the husband as survivor is a fixed and stable right, over which the court has no control, and of which he cannot be divested."

In construing a marriage contract, and discussing the husband's right to administer upon his deceased wife's separate estate, in *Loftus* v. *Penn*, 1 Swan, 445, this court said:

"To determine this question, we must examine the contract of the parties, and ascertain what was their intention in reference to the ultimate disposition of the property; for, if by the contract, the husband parted with all claim to the property and excluded his marital right beyond the point of coverture, the law will exclude him, and the property will go to the next of kin. But if, on the other hand, he is not excluded beyond the period of coverture by the plain meaning of the contract, his marital right, although suspended during coverture, attaches immediately upon the death of his wife, and he is entitled to the administration and to the property *jure mariti.*"

In *Hays* v. *Bright*, 11 Heisk., 325, it was said:

"It is settled that by marriage the absolute property of the wife's chattels vests in the husband, and, if there be a marriage contract whereby this right is abridged, it is taken away only to the extent stipulated in the settlement. When the settlement makes no disposition of the property in the event of the wife's death, and provids only for her dominion over it during coverture, the

right of her husband as survivor is a fixed and stable right, over which the court has no control, and of which he cannot be divested."

So it is perceived the rule is well settled, where a separate estate in chattels is created by marriage contract, and it must be that, when created by gift from a third party, the husband's right to such estate is only suspended or abridged during the period of coverture; and unless his right as a survivor is cut off by clear and distinct expressions, he is entitled to administer, and to take possession of, his wife's separate estate at her death.

Why should the husband's rights in a separate estate created in the wife by marriage settlement, or by gift of a third party, be different from his rights respecting her separate estate created by direct gift of personalty from him?

There can certainly be no reason for taking such a distinction in equity and good conscience. Most men, as they prosper, give to their wives, from time to time, jewelry, money, and other personalty. Such gifts are made partly in token of affection, and also by way of putting something beyond the reach of misfortune and any creditor that the husband may thereafter have. These gifts, under our decisions, become the separate estate of the wife, and over such estate the husband has no dominion or control whatever The wife is free to dispose of it during her lifetime, if she so desires; and, under our statute, she is free to will it at her death to whomsoever she may choose. If she does not, however,

make any disposition of it, as women often do not, it is right and just, at her death, in the absence of a contrary expression from her, that this estate should go back to her husband who created it, rather than to the wife's kin, for whom she usually has less affection than she entertains for her husband.

Counsel for the complainant presses the case of *Bingham* v. *Weller*, 113 Tenn., 70, 81 S. W., 843, 69 L. R. A., 370, 106 Am. St. Rep., 803, upon the consideration of the court. In that case it was held that a husband, who by deed conveys real estate to his wife, and thereby creates in her, as to such property, a separate estate (*Barnum* v. *Le Master*, 110 Tenn., 638, 75 S. W., 1045, 69 L. R. A., 353), also by the same deed conveys and cuts off his rights as tenant by the curtesy in such land.

Section 3672 of Shannon's Code, to the effect that every grant or devise of real estate shall pass the entire estate of the grantor or devisor, unless an intention to pass a less estate appears from the terms of the instrument, was doubtless considered by the court in *Bingham* v. *Weller*, and the conclusion reached that the husband's deed passed his *inchoate* right to curtesy. This statute was referred to in *Barnum v. Le Master*, and the decision partly rested thereon. We have no such statute in regard to conveyance of personalty. *Bingham* v. *Weller* followed the case of *Barnum* v. *Le Master* to its limit, and then proceeded much beyond.

Inasmuch as we are not dealing here with a conveyance of real estate, it is not necessary to discuss the result reached in *Bingham* v. *Weller*, except to say we

are unwilling to extend the authority of that case to such a latitude as the complainant here seeks to press it.

The rights of the wife are the same as to her separate estate, whether that estate comes from a third party, be secured to her by marriage contract, or is the gift of her husband. We perceive no sound reason why the rights of the husband in respect to such estate—at least if it be personalty—should be affected by the source from whence it came.

There is no more force in the contention that, by a gift of personal property to his wife, the husband parts with his right, upon her death intestate, to take such property as husband or administrator, than there would be in a contention that, by a gift of personal property to his *only* child, a father had parted with his right, upon the death of that child, unmarried and intestate, to take such property as next of kin.

It has been thoroughly established by our earlier decisions that the husband is entitled to administer upon, and possess himself of, his wife's separate personal estate, unless such right was clearly and distinctly excluded by the terms used in creating that estate. We regard these decisions as announcing a just and correct rule, and a rule that should be adhered to, regardless of the origin of the separate estate.

Other matters arising in this case have been disposed of orally.

The decree of the chancellor will be affirmed, with costs.