IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

---

## NASHVILLE, DECEMBER TERM, 1915.

---

### T. D. TRAVIS *et al. v.* P. T. SITZ *et al.*

*(Nashville,* December.Term, 1915.)

1. **HUSBAND AND WIFE.** Wife's separate estate. Conveyance creating.

In a conveyance of real estate to a'daughter, to take effect after the death of the grantor and his wife, the words "to have and to hold said tract of land to the said L. H. and her heirs, free from the debts, liabilities, or contracts of her husband if she should ever marry, and not to be liable to be sold for the debts of any husband she may have if she ever marries," created a separate estate, without the aid of a clause restraining alienation. (*Post, pp.* 163-167.)

Cases cited and approved: Darley v. Darley, 3 Atk., 399; Cape v. Cape, 2 Y. & C., 543; Lee v. Prideaux, 3 Bro. Chy., 383; Tyrrell v. Hope, 2 Atk., 558; Prichard v. Ames, T. & R., 222; Kirk v. Paulin, 7 Vin. Abr., 95; Atcherly v. Vernon, 10 Mod., 531; Wagstaff v. Smith, 9 Ves., 520; Dixon v. Olmius, 2 Cox, 414; Simmons v. Horwood, 1 Keen, 9; Tullett v. Armstronge,

Travis v. Sitz.

1 Beav., 1; Bain v. Lescher, 11 Sim., 397; Margetts v. Barringer, 7 Sim., 482; Gouler v. Camm, DeG., F. & J., 146; Tyler v. Lake, 2 R. & M., 188; Powell v. Powell, 28 Tenn., 477; Barnum v. Le Master, 110 Tenn., 638; Williford v. Phelan, 120 Tenn., 589; Mitchell v. Bank, 126 Tenn., 669; Hamilton v. Bishop, 16 Tenn., 33; Beaufort v. Collier, 25 Tenn., 487; Loftus v. Penn, 31 Tenn., 445; Gardenhire v. Hinds, 38 Tenn., 402; Pearson v. Davis, 48 Tenn., 593; Eaves v. Gillespie, 31 Tenn., 128; Woods v. Sullivan, 1 Swan, 507; Houston v. Embry, 33 Tenn., 480; Meredith v. Owen, 36 Tenn., 223; Baggett v. Meux, 1 Coll., 138; Stogdon v. Lee, 1 Q. B., 661; Molloy v. Clapp, 70 Tenn., 586; Wood v. Polk, 59 Tenn., 220.

Cases cited and distinguished: Grotenkemper v. Carver, 77 Tenn., 280; Young v. Young, 56 N. C., 216; Martin v. Bell, 9 Rich. Eq. (S. C.), 42.

2. **HUSBAND AND WIFE.** Wife's separate estate. Statute. Shannon's Code, sections 4234, 4235, providing that there can be no dispossession of the husband or wife on a sale under execution of the husband's interest in the wife's general real estate during the life of the wife, that it cannot during her life be aliened by the husband, and Acts 1879, chapter 141, reducing the husband's rights of curtesy in the wife's land, have no bearing on the inferences to be drawn from the language of a deed showing an intention to create a separate estate in the wife. (*Post*, *pp*. 167-169.)

Acts cited and construed: Acts 1879, ch. 141.

Cases cited and approved: Coleman v. Satterfield, 39 Tenn., 259; Lucas v. Rickerich, 69 Tenn., 728; Garth & Buckman v. Fort, 83 Tenn., 683; Key v. Snow, 90 Tenn., 663; McCallum v. Petigrew, 57 Tenn., 394; Corley v. Corley, 67 Tenn., 7; Bryant v. Freeman, 131 Tenn., 87; Parlow v. Turner, 132 Tenn., 339; Ables v. Ables, 86 Tenn., 333; Price v. Planters' Nat. Bank, 92 Va., 468.

Codes cited and construed: Secs. 4234, 4235 (S.).

3. **HUSBAND AND WIFE.** Wife's separate estate. Necessity of trustee.

A trustee is not essential to the creation of a separate estate. (*Post, p.* 169.)

Case cited and distinguished: Hamilton v. Bishop, 16 Tenn., 33.

4. **HUSBAND AND WIFE.** Separate estate. Property of wife at time of marriage.

Although property may be given to a woman to her sole and separate use while she is single, and not in contemplation of any particular intended marriage, the peculiar properties of the separate estate did not and cannot exist until she is married. (*Post, p.* 169.)

5. **PERPETUITIES.** Restraint on alienation. Wife's separate estate.

A deed to a daughter, creating a separate estate, providing that the land was given without power of disposal in any way, and not to be liable to be sold for her debts, or the debts or liabilities of any husband, was not invalid as a restraint on alienation. (*Post, pp.* 169-171.)

Cases cited and approved: Clive v. Carew, 1 John. & Hem., 199; Sheriff v. Butler, 12 Jur. (N. S.), 329; Lady Bateman v. Faber, 67 L. J. Ch., 130; Stanley v. Stanley, 7 Ch. Div., 589; Richards v. Chambers, 10 Ves., 580; Tullett v. Armstrong, 4 Myl. & Cr., 377; Hauser v. St. Louis, 170 Fed., 906.

Case cited and distinguished: Baggett v. Meux, 1 Coll., 138-153.

6. **HUSBAND AND WIFE.** Wife's separate estate. Statute.

Acts 1913, chapter 26, removing the disabilities of coverture in respect of married women, and practically making their estates separate, does not interfere with or disturb the creation or operation of equitable separate estates, since the removal by the statute of the wife's disabilities increased rather than diminished the necessity for such estates. (*Post, pp.* 171-177.)

Acts cited and construed: Acts 1913, ch. 26.

Travis v. Sitz.

Cases cited and approved: Pooley v. Webb, 43 Tenn., 599; Young v. Young, 47 Tenn., 461; Hix v. Gosling, 69 Tenn., 560; Eckerly v. McGhee, 85 Tenn., 664; Webster v. Helm, 93 Tenn., 322; Bank v. James, 95 Tenn., 8; Robinson v. Queen, 87 Tenn., 445; Musson v. Trigg, 51 Miss., 172; Hooks v. Brown, 62 Ala., 258; Holliday v. Hively, 198 Pa., 342.

Cases cited and distinguished: MacConnell v. Lindsay, 131 Pa., 476; Hays v. Leonard, 155 Pa., 474.

7. EQUITY. Bill of review. Right to file. Minors.

A minor may file an original bill in the nature of a bill of review to question matters adjudged against him. (*Post, pp.* 177, 178.)

Cases cited and approved: Livingston v. Noe, 69 Tenn., 63; McCown v. Moores, 80 Tenn., 635; Winchester v. Winchester, 38 Tenn., 460; Anderson v. Ammonett, 77 Tenn., 1; Greenlaw v. Greenlaw, 84 Tenn., 435; Wilson v. Schaefer, 107 Tenn., 300; Stephens v. Porter, 58 Tenn., 341; Puckett v. Wynns, 132 Tenn., 513.

8. EQUITY. Bill of review. Collateral attack. Innocent purchaser.

The rights of an innocent purchaser under a decree could not be interfered with, either by a bill of review for error apparent or an original bill in the nature of a bill of review. (*Post, pp.* 177, 178.)

9. DEEDS. Rights of heirs. Separate estate of wife.

Under a deed creating a separate estate in a wife, her children could have no interest, save as her heirs at law. (*Post, pp.* 178, 179.)

Cases cited and approved: Hix v. Gosling, 69 Tenn., 560; Old Folk's Society v. Millard, 86 Tenn., 657.

10. HUSBAND AND WIFE. Wife's separate estate. Restraint on alienation. Power of court.

Where a bill was filed by the husband and wife in substantially an *ex parte* proceeding for the purpose of obtaining leave of the chancellor to violate a clause restraining alienation in a deed creating a separate estate in the wife, the chancellor was with-

out jurisdiction of the subject-matter, and his decree was inoperative.   (*Post, pp.* 178, 179.)

11. **JUDGMENT.   Collusive decree.   Effect.**

A collusive decree between husband and wife can be treated, as to third parties, only as a deed between them.   (*Post. pp.* 178, 179.)

12. **JUDGMENT.   Collusive decree.   Construction of deed. .**

A collusive decree, obtained by a husband and wife concerning the validity of a deed, or of any clause thereof, filed against persons who on the face of the bill had no interest in the controversy, will be treated as to third persons only as a deed between the husband and wife.   (*Post, pp.* 178, 179.)

13. **ABATEMENT AND REVIVAL.   Other action pending.   Ground for demurrer.**

To recover land conveyed in violation of a restraint on alienation, pendency of a prior suit on the same matter would not be ground of demurrer, but for motion to elect.   (*Post, pp.* 179, 180.)

Case cited and approved: Clark v. Garrett, 74 Tenn., 262.

14. **ABATEMENT AND REVIVAL.   Grounds   Other action pending.**

Pendency of a prior suit will not be ground for a plea in abatement, where the bill states that the record in the old case has been lost and cannot be found.   (*Post, pp.* 179, 189.)

15. **HUSBAND AND WIFE.   Separate estate of wife.   Conveyance.**

The rule that a married woman will not be permitted in a court of equity to disaffirm a voidable sale made by her, the consideration of which has been paid directly to her, except on condition that she refund the purchase money, or that it be declared a lien on the property, does not apply where the sale has been made in violation of a restraint on alienation.   (*Post, pp.* 180-182.)

Cases cited and approved: Bradshaw v. Van Valkenburg, 97 Tenn., 316; Cox v. Building & Loan Association, 101 Tenn., 490; Harris v. Smith, 98 Tenn., 286; Pilcher v. Smith, 39 Tenn., 208; Aiken

Travis v. Sitz.

v. Suttle, 72 Tenn., 103; Bank v. James, 95 Tenn., 8; Richards v. Chambers, 10 Ves., 580.

16. HUSBAND AND WIFE. Separate estate of wife. Conveyance.

Where a married woman disaffirms a sale made by her of her separate estate, voidable because of a restraint on alienation, she may recover such rents acruing from the date when she surrendered possession. (*Post, pp.* 182, 183.)

Cases cited and approved: Rowan v. Riley, 65 Tenn., 67; Smith v. Heirs, etc., of Thomas, 83 Tenn., 324; Combs v. Combs, 131 Tenn., 66.

17. DESCENT AND DISTRIBUTION. Right of heirs. Wife's separate estate.

Where a sale by a married woman of property constituting her separate estate is void because of a restraint on alienation, although her heirs at law cannot recover rents accruing before her death, in the absence of a tenancy by curtesy in the surviving husband, they could recover for rents not in arrears at her death. (*Post, pp.* 182, 183.)

18. CURTESY. Requisites. Wife's separate estate.

Where there was no language, in a deed creating a separate estate, cutting off the husband's marital rights beyond the death of the wife, which intention must be clearly expressed, all the elements of a tenancy by curtesy existing, marriage, birth of issue capable of inheriting, seisin in the wife, and death of the wife, the husband was entitled to a tenancy by curtesy. (*Post, pp.* 183, 184.)

Cases cited and approved: Carter v. Dale, 71 Tenn., 710; Frazer v. Hightower, 59 Tenn., 94; Bingham v. Weller, 113 Tenn., 70; Monroe v. Van Meter, 100 Ill., 347.

19. CURTESY. Wife's separate estate. Construction of deed.

Under Shannon's Code, section 3672, making the use of the words "heirs and assigns" unnecessary, the failure to use the word "assings," in a deed conveying a separate estate and imposing

135 Tenn.—11

a restraint on alienation, would not defeat the surviving husband's right to a tenancy by curtesy. (*Post. pp.* 184, 185.)

Cases cited and approved: Teague v. Sowder, 121 Tenn., 132; Kendall v. Clapp, 163 Mass., 69; Goetz v. Ballou, 64 Hun, 490; Johnson v. Morton, 28 Tex. Civ. App. 296.

Code cited and construed: Sec. 3672 (S.).

20. **CURTESY. Wife's separate estate. Construction of deed.**
The words "and her heirs, free from the debts, liabilities, or contracts of her husband if she should every marry," in a deed creating a separate estate in a wife, did not by the use of the word "heirs" import a purpose to cut off a right to a tenancy by curtesy in the surviving husband. (*Post, p.* 185.)

Case cited and approved: Templeton v. Twitty, 88 Tenn., 595.

21. **CURTESY. Requisites. Release by death of issue.**
Where all the requisites of a tenancy by curtesy have existed, the husband is entitled to curtesy on surviving his wife, although all issue have died. (*Post, pp.* 185, 186.)

---

*FROM FRANKLIN*

---

Appeal from the Chancery Court of Franklin County.—V. C. ALLEN, Chancellor.

FLOYD ESTILL, FRANK LYNCH and FELIX LYNCH, for appellants.

ROBINSON & FANCHER, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The first question for determination is whether the following instrument created a separate estate in Laura Hudgins:

"For the love and affection I have for my daughter Laura Hudgins, I, James A. Hudgins, do hereby transfer and convey unto my said daughter Laura Hudgins, to take effect, and with the restrictions hereinafter, a tract of land situated in civil district No. 2, Franklin county, Tennessee. . . . To have and to hold said tract of land to the said Laura Hudgins and her heirs, free from the debts, liabilities, or contracts of her husband if she should ever marry. . . .

But this deed is not to take effect until the death of my wife, and my death, as the use of the place during my life, and the life of my wife, Elizabeth Hudgins, is herein and hereby expressly reserved. My clear intention is to give the said land to my daughter Laura Hudgins at the death of my wife and myself, without power of disposal in any way, and not to be liable to be sold for her debts, or the debts or liabilities of any husband she may have if she ever marries. This 4th day of October, 1879."

We are of the opinion that a separate estate was created by the words:

"To have and to hold said tract of land to the said Laura Hudgins and her heirs, free from the debts, liabilities, or contracts of her husband if she should ever marry, . . . and not to be liable to be sold for . . . the debts or liabilities of any husband she may have if she ever marries."

We have in this State no direct authority in any published case, but in the second volume of King's Digest, p. 1275, section 68, there is a reference to an

unreported decision, *Blackwell* v. *Blackwell,* rendered at Brownsville in 1869, which seems to be authority on the point. In that case the conveyance contained the clause:

"None of the property shall ever be subject to the debts of the husband, and that the husband be permitted, during the joint lives of himself and wife, to use, control, work, manage, and direct all the said property as he may judge best, receiving and applying the earnings, proceeds, and profits to the joint use and benefit of himself and wife, for the support, maintenance, and education of the issues of the intended marriage, if any there be."

It was held, according to Mr. King's report of the case, that this language created a separate estate in the wife as to the *corpus,* and a joint estate as to the income and earnings.

In *Grotenkemper* v. *Carver,* 9 Lea (77 Tenn.), 280, the language of the instrument was:

"To her sole and separate use, and to be held by her free from the debts, liabilities, and contracts of her present husband, William H. Carver, or any future husband she may have."

The court said that the words "to her sole and separate use" were sufficient to create a separate estate, and that the residue of the sentence, through being in accordance with an established legal usage, "was intended to make assurance doubly sure, by expressing the grantor's object in a different form." The same form, substantially, appears in *Molloy* v. *Clapp,*

2 Lea (70 Tenn.), 586, and *Wood* v. *Polk,* 12 Heisk. (59 Tenn.), 220; but these cases went off on other points.

The precise point, however, arose in *Young* v. *Young,* 56 N. C., 216, 219. The language there considered was, immediately following the bequest 'of a slave to testator's married daughter Anna Young:

"And not to be subject to any debt or debts which Jesse Young may contract, or may have contracted."

The court said:

"Here is a plain and manifest intention on the part of the donor that the slave Mariah shall be for the sole and separate use of the wife and her children. The husband, Mr. Young, has no interest in the slave."

To the same effect is *Martin* v. *Bell,* 9 Rich. Eq. (S. C.), 42, 70 Am. Dec., 200. The language there under examination was:

"The property, real or personal, that my three daughters (naming them) may or do receive by this my will, I hereby settle it on them and the lawful issue of their bodies forever, and I do declare that it shall in no wise be subject to the debts of their husbands, in no case whatsoever."

It was held the daughters took separate estates.

The matter for ascertainment in all cases of this nature is whether it was the intention of the settler to exclude the husband. In addition to the words, to the "sole and separate use" of the wife, which are universally held to create a separate estate, the fol-

lowing have in England been held sufficient evidence of the purpose, namely:

"For her livelihood," *Darley* v. *Darley*, 3 Atk., 399; *Cape* v. *Cape*, 2 Y & C., 543; *Lee* v. *Prideaux*, 3 Bro. Chy., 383; "That she may receive and enjoy the profits," *Tyrrell* v. *Hope*, 2 Atk., 558; "to be at her own disposal, *Prichard* v. *Ames*, T. & R., 222; *Kirk* v. *Paulin*, 7 Vin. Abr., 95; "to be by her laid out as she shall think fit." *Atcherly* v. *Vernon*, 10 Mod., 531; "for her own use independant of the husband," *Wagstaff* v. *Smith*, 9 Ves., 520; *Dixon* v. *Olmius*, 2 Cox, 414; *Simmons* v. *Horwood*, 1 Keen, 9; *Tullett* v. *Armstrong*, 1 Beav., 1; "not subject to his control," *Bain* v. *Lescher*, 11 Sim., 397; "to her own use and benefit independent of any other person," *Margetts* v. *Barringer*, 7 Sim., 482; "to receive the rents while she lives, whether married or single," *Goulder* v. *Camm*, De G., F. & J., 146; "her receipt to be a sufficient discharge," *Lee* v. *Prideaux*, 3 Bro. Chy., 381, 382; *Tyler* v. *Lake*, 2 R. & M., 188; "to be delivered to her on demand," *Dixon* v. *Olmius*, 2 Cox, 414.

We have, in our Reports, many cases on the subject. The few which we cite will perhaps give a fair general view of our law, in respect of the matter, in its varied aspects. *Powell* v. *Powell*, 9 Humph. (28 Tenn.), 477; *Barnum* v. *LeMaster*, 110 Tenn., 638, 75 S. W., 1045, 69 L. R. A., 353; *Williford* v. *Phelan*, 120 Tenn., 589, 113 S. W., 365; *Mitchell* v. *Bank*, 126 Tenn., 669, 150 S. W. 1141; *Hamilton* v. *Bishop*, 8 Yerg. (16 Tenn.), 33, 29 Am. Dec., 101; *Beauford* v. *Collier*, 6

Humph. (25 Tenn.), 487, 44 Am. Dec., 321; *Loftus* v. *Penn,* 1 Swan (31 Tenn.), 445; *Gardenhire* v. *Hinds,* 1 Head (38 Tenn.), 402; *Pearson* v. *Davis,* 1 Heisk. (48 Tenn.), 593.; *Eaves* v. *Gillespie,* 1 Swan (31 Tenn.) 128; *Woods* v. *Sullivan,* 1 Swan, 507; *Houston* v. *Embry,* 1 Sneed (33 Tenn.), 480; *Meredith* v. *Owen,* 4 Sneed (36 Tenn.), 223.

It may be said of the language in the deed now before us that it is difficult to conceive of the husband (without the intervention of some form of trust) owning property which is not at all liable for his debts, nor subject to his contractual powers. So by exclusion of the legal incidents that attend the right of property it is clear on principle that the language could have no other meaning than an intention to exclude the husband.

We do not think any strength is added to this conclusion by the clause restraining alienation, as insisted by learned counsel. *Baggett* v. *Meux,* 1 Coll., 138; *Tullett* v. *Armstrong,* 1 Beav., 1; *Stogdon* v. *Lee,* 1 Q. B., 661. In the case last cited it is said that to infer the existence of a separate estate from the mere fact of a restraint on alienation would result in the plainly unsound conclusion that that which is a mere accessory to the separate use, for the purpose of rendering it effectual, ought, standing alone, to compel an implication of that separate use to which it is only an accessory.

Before leaving this branch of the case, it is well to note a question debated at the bar and in the briefs;

that is, whether our act of 1849-50 (Shannon's Code, sections 4234, 4235) has any bearing on the controversy. The substance of that statute, as construed by our cases, is that, not only can there be no dispossession of the husband and wife, or either of them, on a sale under execution of the husband's interest in the wife's general real estate, during the life of the wife, but it cannot during her life be aliened by the husband voluntarily in such way as to dispossess her, or, if dispossesed, she may recover possession by suit through a next friend, making her husband a defendant. *Coleman* v. *Satterfield*, 2 Head, 259, 264, 265; *Lucas* v. *Rickerich*, 1 Lea (Tenn.), 728; *Garth and Buckman* v. *Fort*, 15 Lea (83 Tenn.), 683, 687, 688; *Key* v. *Snow*, 90 Tenn., 663, 18 S. W., 251; *McCallum* v. *Petigrew*, 10 Heisk. (57 Tenn.), 394; *Corley* v. *Corley*, 8 Baxt. (67 Tenn.), 7; *Bryant* v. *Freeman*, 131 Tenn., 87, 173 S. W., 863, L. R. A., 1915D, 996. By Acts 1879, chapter 141, the rights of the husband in the wife's land, as tenant by the courtesy initiate, were so reduced that he was left only the privilege of renting out the land as governor of the family, and of collecting the rents for the benefit of the family. *Parlow* v. *Turner*, 132 Tenn., 339, 347, 178, S. W., 766; *Ables* v. *Ables*, 86 Tenn., 333, 9 S. W., 692. Would the meager nature of the husband's interest have any bearing on the inferences to be drawn from the language of the deed in question, which we have just held showed an intention to create a separate estate in the wife? It would not.

In the discovery and determination of a purpose to create a separate estate, the inquiry is not necessarily confined to property in which the husband would have an interest, but for the existence of such separate estate. *Price* v. *Planters' Nat. Bank,* 92 Va., 468, 23 S. E., 887, 32 L. R. A., 214.

We may add that a trustee is not essential to the creation of a separate estate (*Hamilton* v. *Bishop,* 8 Geog. [16 Tenn.], 33, 42, 29 Am. Dec., 101), and that— "property may be given to a woman to her sole and separate use while she is single, and not in contemplation of any particular intended marriage and the gift is valid in that form but the peculiar properties of the separate estate do not and cannot exist until she is married." 3 Pom. Eq. Jur. (3d Ed.), section 1109.

The restraint on alienation contained in the deed to Laura Hudgins was valid. *Baggett* v. *Meux,* 1 Coll., 138—153, 1 Phill., 627; *Clive* v. *Carew,* 1 John. & Hem., 199, 70 Eng. Reprint, 719; *Sheriff* v. *Butler,* 12 Jur. (N. S.), 329; *Lady Bateman* v. *Faber,* 67 L. J. Ch., 130, 1 Chy., 144; *Stanley* v. *Stanley,* 7 Ch. Div., 589; *Richards* v. *Chambers,* 10 Ves., 580.

In *Baggett* v. *Meux,* supra, the testator, having created a separate estate in his daughters, used with respect thereto the following language:

"I hereby declare that neither of my said daughters shall sell, mortgage, charge, or incumber the estates or property by me given, devised and bequeathed to them."

This was held a valid restriction.

"Now, it being clear and admitted on all hands," said the vice chancellor, "that with respect to a life interest given to a married woman for her separate use she may be effectually restrained from doing, during coverture, any act of alienation, total or partial (without any clause of forfeiture, and without any limitation over taking effect upon such an act), it being clear, as I apprehend, that a clause prohibiting alienation, or anticipation by a married woman of her separate estate (when there is no such provision of forfeiture or limitation over), however the prohibition may be expressed, whether in terms confining it to a period of coverture, or in terms general and undefined, or in terms distinctly expressing a period beyond as well as during coverture, has by law validity allowed to it, as to a life interest, at least, but that this validity is by the same law (whatever the expressions), not permitted to extend to a period beyond coverture (that is the law of its own force, preventing the restriction from operation or effect as to any act done when coverture does not exist), . . . I am at a loss to discover any sufficient reason why that which holds good as to a life interest should not equally hold good as to an absolute estate. Why should there be any difference?"

This was subsequently affirmed in 1 Phill., 627, the Lord Chancellor saying:

"The object of the doctrine" establishing separate estates "was to give to married women the enjoyment

of property independent of the husband; but to se-
cure that object it was absolutely necessary to res-
train her during coverture from alienation. The rea-
soning evidently applies to a fee as much as to a life
estate, to real property as much as to personal. The
power of a married woman, independant of the trust
for separate use, may be different in real estate from
what it is in personal; but a court of equity, having
created in both a new species of estate, may in both
cases modify the incidents of that estate.''

And see the great case of *Tullett* v. *Armstrong,* 4
Myl. & Cr. 377, in which the subject was fully discuss-
ed by Lord Chancellor Cottenham.

The validity of the restraint on alienation in such
cases has been recognized in this country in several
States, Arkansas, Florida, Georgia, Kentucky, North
Carolina, South Carolina, Texas, Virginia, and West
Virginia, and in the federal courts. See *Hauser* v.
*St. Louis,* 170 Fed., 906, 96 C. C. A., 82, 28 L. R. A.
(N. S.), 426, and note.

In this State we have perhaps no direct decision
on the point, but the principle is clearly recognized in
*Pooley* v. *Webb,* 3 Cold. (43 Tenn.), 599; *Young* v.
*Young,* 7 Cold. (47 Tenn.), 461, 476; *Hix* v. *Goslin,* 1
*Lea* (69 Tenn.), 560; *Eckerly* v. *McGhee,* 85 Tenn.,
644, 4 S. W., 386; *Webster* v. *Helm,* 93 Tenn., 322, 24 S.
W., 488; *Bank* v. *James,* 95 Tenn., 8, 30 S. W., 1038.
And see *Robinson* v. *Queen,* 87 Tenn., 445, 11 S. W.,
38, 3 L. R. A., 214, 10 Am. St. Rep., 690, where our
statute is referred to, which also recognizes the prin-

ciple. Before passing from this branch of the case, it may be proper to note, in view of our Acts 1913, chapter 26, removing the disabilities of coverture in respect of married women, and practically making their estate separate, that under the authorities such acts do not interfere with or disturb the creation or' operation of the equitable separate estate so long and so beneficially enforced and protected in courts of chancery; and therefore parents and others, desiring to provide for wives or children, may, by restraints on alienation in such settlements, still throw around them the safeguards devised by the wisdom of the great equity judges. *Musson* v. *Trigg,* 51 Miss., 172, 182-184; *Hooks* v. *Brown,* 62 Ala., 258; *MacConnell* v. *Lindsay,* 131 Pa., 476, 19 Atl., 306; *Hays* v. *Leonard,* 155 Pa., 474, 26 Atl., 664; *Holliday* v. *Hively,* 198 Pa., 342, 47 Atl., 988. And as to the necessity for such protection we cannot refrain from quoting the following from *MacConnell* v. *Lindsey,* supra:

"Neither has the act of 1848, or the act of 1887, nor both of them together, dispensed with the necessity which originally gave rise to this equity. Heretofore a married woman was protected from her own improvidence, as well as the improvidence of her husband, by her disabilities; and, as these disabilites are now to a great extent removed, the necessity is increased, rather than diminished. Her disabilities, her want of power to yield to her husband's solicitations, or to give way to her own sympathies, have always been supposed to afford her the highest pro-

tection. Complete protection, as the law now stands, therefore, is found only in a trust for her separate use."

As said in *Hays .v. Leonard,* supra:

"An act of assembly cannot prevent the wife-from yielding to over-persuasion or coercion. It can declare that her estate shall not be incumbered or conveyed by her husband or seized for his debts, but so long as she has the power to incumber or to convey she may be plied with entreaty, or argument, or threats, until her will is overcome and her property incumbered or lost. To protect her from herself the separate use trust has an important place to fill, and has not been rendered useless by the legislation referred to."

The remaining questions arise out of the facts now to be stated:

Laura Hudgins intermarried with one Sanders, by whom she had four children, three of whom are still living. After the death of Sanders she intermarried with the defendant P. T. Sitz, who survived her. By this last marriage she had one child, Turney Sitz, who also survived his mother. James A. Hudgins and his wife, the parents of Laura Hudgins, died prior to the intermarriage of Laura and the said P. T. Sitz. On February 28, 1901, Sitz and wife filed their bill in the chancery court of Franklin county against her children by the Sanders marriage for the purpose of having the restraint on alienation in the above-mentioned deed declared void, because repug-

nant to the estate granted. The bill in that case charged that the deed conveyed an absolute estate in fee simple; that the clause in restraint of alienation was repugnant thereto, and hence. void. The defendants were all minors and nonresidents. Publication was made for them, however, and a guardian *ad litem* appointed, who filed an answer insisting that Laura Sitz, the mother of the defendants to that bill, had only a life estate and possessed no power or right to have the land sold. The chancellor rendered a decree declaring the clause in question repugnant to the granting clause, and void, and that Sitz and wife had the right to dispose of the land as fully as if the restraining clause had never been written into the deed. Subsequently Sitz and wife executed a deed in trust on the land to J. R. Clark, trustee, to secure the Union Central Life Insurance Company for a loan of $1,000. Later Sitz and wife attempted to convey the land to one P. A. Shadow, a defendant in the present proceeding, for the consideration of $3,-000, $2,000 of which was paid in cash, and the remaining $1,000 by Shadow's assumption of the debt due the insurance company. This deed was executed on August 21, 1903. On April 2, 1904, Shadow executed a mortgage on the land to the same trustee Clark, to secure a loan of $2,000 made to him by the same insurance company. On January 13, 1906, Mrs. Laura Sitz died. On August 27, 1906, the present complainants, being all of the children of Mrs. Sitz by both marriages, brought their suit in equity to re-

cover the land as heirs at law of Mrs. Sitz. After that suit was brought Shadow conveyed the land to defendant J. H. Collins for the consideration of $7,-000, of which $1,000 was paid in cash,  $3,000 by the assumption of the mortgage debts, and the residue in equal installments, payable during the years 1910, 1912, and 1913.  That bill was filed for the purpose of reviewing the former decree concerning the invalidity of the clause in restraint of alienation. That bill never came to a hearing, was pending when the present bill was filed, but the record was lost, and could not be found.  The present bill was filed June 3, 1911.  This bill recites the matters previously stated, avers the validity of the the restraining clause in the Hudgins deed, attacks the decree of the chancery court declaring that clause void, charges that the decree itself was void, on the ground that the court had no power to make it, but, if not void, sought to have it reviewed and set aside.  The bill alleged the ages of the complainants as follows: Lizzie Travis (formerly Sanders), twenty-three; Mattie Ray (formerly Sanders), twenty; Willia Sanders, eighteen and that Turney Sitz was a minor of tender years, all of which was sustained by the evidence. The defendants filed a demurrer to the bill, which was sustained by the chancellor, but on appeal to the court of civil appeals that decree was reversed, and the cause remanded for answer and a hearing on the merits.  Defendant Collins answered, admitting in substance the allegations of the bill so far as we

have recited them, but denying the validity of the clause in the deed against alienation, or any error in the decree in respect thereof; averring that the proceeding was instituted at the instance of Mrs. Sitz, that the consideration paid by Shadow was a fair one, that it was paid directly to Mrs. Sitz, and that the deed to Shadow was made according to her own will and wish; averring that defendant Collins had paid to Shadow all of the consideration promised except $1,000; pleading that he (Collins) is a *bona fide* purchaser of the land, without notice of any coercion practiced by Sitz upon his wife, if any such was practiced; that the bill filed by complainants on August 27, 1906, against Shadow had been abandoned when he (Collins) purchased from Shadow; that the complainants were estopped by the fact that their mother, Laura Sitz, had filed the bill of February 28, 1901, making the allegations contained therein, and that such proceedings were had in that cause as that the clause against alienation was declared void, and that she took an absolute estate under the deed, and by the fact that she and her husband executed the mortgage to the insurance company, and made the deed to Shadow; that "respondent relied upon, and acted upon, the conduct of the said Laura Hudgins Sitz, in filing said bill and procuring said decree, as well as her conduct in the execution of said mortgage to the Union Central Life Insurance Company, and the convenance to P. A. Shadow; and respondent is advised and avers that her conduct in that behalf estops her,

and those claiming under her, and respondent pleads it as an estoppel;'' that at all events, P. T. Sitz, having survived his wife, and there having been a child of the marriage, he was entitled to an estate by the curtesy in the land, and this estate, if no more, passed to defendant Collins by the deed which Shadow made to him. P. A. Shadow filed an answer containing the same defenses. P. T. Sitz filed an answer in full accord with the answers just referred to.

The evidence fails to show that Mrs. Sitz was coerced into filing the bill to have the clause against alienation declared void, or into subsequently mortgaging the land to the insurance company, or into thereafter selling the land to defendant Shadow; but it also fails to show that she received the money arising from the loan. The weight of the evidence is to the effect that Sitz himself received the money borrowed from the insurance company. The $2,000 purchase money arising from the sale to Shadow was paid by his check, which was received and indorsed by Mrs. Sitz. The evidence fails to show that the price paid by Shadow was, at the time, a full and fair price for the tract.

The bill in the present case is in substance and legal effect an original bill in the nature of a bill of review. That such a bill may be filed by minors to question matters adjudged against them is well settled. *Livingston* v. *Noe,* 1 Lea (69 Tenn.), 63, 64; *McCown* v. *Moores,* 12 Lea (80 Tenn.), 635, 637, *et seq.*

But, whether treated as an original bill in the nature of a bill of review or simply as a bill of review for error apparent, the rights of innocent purchaser under a decree could not thereby be interfered with. *Winchester* v. *Winchester,* 1 Head (38 Tenn.), 460, 500; *Livingston* v. *Noe,* 1 Lea (69 Miss.), 55, 66; *Anderson* v. *Ammonett,* 9 Lea (77 Tenn.), 1, 11-13; *Greenlaw* v. *Greenlaw,* 16 Lea (84 Tenn.), 435, 441; *Wilson* v. *Schaefer,* 107 Tenn., 300 and 330, *et seq.,* 64 S. W., 208. And see *Stephens* v. *Porter,* 11 Heisk. (58 Tenn.), 341, 344, and *Puckett* v. *Wynns,* 132 Tenn., 513, 522 *et seq.,* 178 S. W., 1184.

But although the defense of innocent purchaser was made in the answers, yet little evidence seems to have been submitted thereon, except the fact that Shadow had paid $2,000 of the purchase money to Mrs. Sitz; nor is there any error assigned under that defense, the parties appearing to have proceeded in the actual conduct of the case as if the question were a matter of original litigation on the merits of the clause in restraint of alienation. Nor are we prepared to say that they did not act correctly in so doing, since under the deed the children of Mrs. Sitz had no interest, and could have none save as her heirs at law. The bill, then, filed by Sitz and wife, was in substance an *ex parte* proceeding to obtain the opinion of the chancellor as to the validity of the restraining clause. If it had been filed directly for the purpose of obtaining leave of the chancellor to violate that clause, he would have been without jurisdiction

of the subject-matter, and his decree would have been inoperative. *Hix* v. *Gosling,* 1 Lea (69 Tenn.), 560. So a collusive decree between husband and wife can be treated, as to third parties, only as a deed between them. *Old Folks' Society* v. *Millard,* 86 Tenn., 657, 8 S. W., 851. The same would be true of a decree obtained by husband and wife concerning the validity of a deed, or any clause thereof, filed against persons who on the face of the bill had no interest in the controversy.

The errors assigned by the defendants are that the court of civil appeals erred (1) in overruling the demurrer to the bill; (2) in holding that the decree in restraint of alienation was valid; (3) in holding that Collins was not entitled to restitution of the purchase money paid by Shadow to Mrs. Sitz for the land in controversy.

The case was first before the court of civil appeals on bill and demurrer. That court overruled the demurrer, and remanded the case to the chancellor for answer and further proceedings. That decree was not questioned in the supreme court by *certiorari,* and so the case went back for trial. It was then tried in the chancery court, a final decree rendered, an appeal prayed again to the court of civil appeals, a decree by that court, and the cause was then brought to this court. Now, assuming, without deciding, that this court could; under such a state of the record, review the action of the court of civil appeals on the demurrer, we say that the only point relied on in the brief ac-

companying the assignment of errors is the pendency
of a prior suit on the same matter. That would not be
ground of demurrer, but for a motion to elect. The
authority cited to sustain the ground of demurrer
stated (*Clark* v. *Garrett,* 6 Lea, 262) does not sus-
tain the point, although there is an erroneous state-
ment to that effect in the syllabus. However, there
can be nothing in the suggestion, because the bill
states that the record in the old case had been lost
and could not be found.

The point contained in the defendants' second as-
signment of error, as to the validity of the clause re-
straining alienation, the commanding question in the
case, is disposed of in the outset of this opinion.

The third of defendants' assignments will now be
considered.

The general rule undoubtedly is that a married
woman will not be permitted, in a court of equity, to
disaffirm a voidable sale made by her, the considera-
tion of which has been paid directly to her, except on
condition that she refund the purchase money, or
that it be declared a lien upon the property. *Brad-
shaw* v. *Van Valkenburg,* 97 Tenn., 316, 323, 37 S. W.,
88; *Cox* v. *Building & Loan Association,* 101 Tenn.,
490, 48 S. W., 226; *Harris* v. *Smith,* 98 Tenn., 286, 39
S. W., 343; *Pilcher* v. *Smith,* 2 Head. (39 Tenn.), 208;
*Aiken* v. *Suttle,* 4 Lea (72 Tenn.), 103. This rule,
however, does not apply where the sale has been made
in violation of a clause in restraint of alienation, and
the reason is that the imposition of such a condition

would render the clause nugatory, destroy the settlement, and so set at naught the purpose of the settler in creating it. *Bank* v. *Jones,* 95 Tenn., 8, 30 S. W., 1038; *Sheriff* v. *Butler,* supra; *Lady Bateman* v. *Faber,* supra; *Stanley* v. *Stanley,* supra; *Clive* v. *Carew,* supra. And see *Richards* v. *Chambers,* 10 Ves., 580, on the general principle.

It may be found useful to refer more particularly to one or two of these English cases. In *Sheriff* v. *Butler,* the facts were that a trustee, holding in trust certain old bank shares under a marriage settlement, accepted an allotment of new shares in the same bank, which afterwards failed. The settlement contained a clause against anticipation. The *cestui que trust,* a married woman, urged the trustee to take the new shares, and she herself sent to the bank the form filled up by him. In the suit a call as to the old shares was directed to be paid out of the trust estate, but as to the new shares it was held the trustee could not be indemnified. In *Stanley* v. *Stanley,* the case was this: A wife, having property settled to her separate use, with restraint upon anticipation, concurred in a fraudulent mortgage upon the property, concealing the restraint on anticipation. The mortgagee, having discovered the fraud, obtained from the married woman a warrant of attorney, entered up judgment thereon, and afterwards obtained a charging order on a dividend due to her the very day it became due. It was held that this was a mere device to make her future income a security for

the mortgage debt, and an attempt to do indirectly what could not be done directly, and that such charging order must be discharged, because in no case and by no device could the restraint on anticipation be evaded. And so in *Lady Bateman* v. *Faber* it was held that the doctrine of estoppel could not be so used as to enable a married woman to deprive herself of income settled to her separate use with a restraint on anticipation; that she could not by an admission raise an estoppel against herself so as to bind her interest.

The defendants' third assignment must, for the reasons stated, be overruled. To sustain it would be but the approval of a device for the evasion of the restraint on alienation.

Next in order is the complainants' assignment to the effect that the court of civil appeals erred in refusing to give complainants a recovery for the rents which accrued from the date of the conveyance to Shadow down to the death of Mrs. Sitz, their mother, if the court should be of opinion that an estate by the curtesy survived in Sitz, and, if not, then all rents that accrued from the date when Sitz and wife surrendered possession. If Mrs. Sitz were suing, we are unable to see how, on the principles already stated, a recovery could be denied her; but she is dead, and her administrator is not before the court. Complainants, suing merely as heirs at law, cannot recover rents that became due to the decedent. However, laying out of view the existence of a tenancy by

the curtesy in the surviving husband, they could re-cover for rents not in arrears at her death. *Rowan* v. *Riley*, 6 Baxt. (65 Tenn.), 67; *Smith* v. *Heirs, etc., of Thomas*, 14 Lea (83 Tenn.), 324; *Combs* v. *Combs*, 131 Tenn., 66, 173 S. W., 441.

This brings us to the question whether the court of civil appeals erred in holding that P. T. Sitz was entitled to a tenancy by the curtesy. In this we are of the opinion there was no error. All of the ele-ments of the estate existed—marriage, birth of issue, capable of inheriting, seisin in the wife, and death of the wife. There is no language in the deed cutting off the husband's marital rights beyond the death of the wife. Such intention must be clearly expressed. *Carter* v. *Dale*, 3 Lea (71 Tenn.), 710, 31 Am. Rep., 660; *Frazer* v. *Hightower*, 12 Heisk. (59 Tenn.), 94; *Bingham* v. *Weller*, 113 Tenn., 70, 81 S. W., 843, 69 L. R. A., 370, 106 Am. St. Rep., 803.

We are referred to *Monroe* v. *Van Meter*, 100 Ill., 347, as authority for the proposition that there can be no tenancy by the curtesy when the conveyance is to the *feme* free from the debts and liabilities of the husband. That case does so hold, but its authority is much impaired by the fact that at the time curtesy did not exist in Illinois, as shown in the opinion, it hav-ing been abolished by statute, and the evidence fail-ing to show that the issue was born before the pas-sage of the act, it also appearing in that case that the wife left a will by which she disposed of the prop-erty, and the two grounds mentioned were held to

furnish a basis for the decision that there was no curtesy. What was said on the third ground, that there could be no curtesy where the conveyance was to be free of the husband's debts, was merely in passing, and can be of little weight as authority. However, in all three of our own cases cited the conveyance excluded the husband's debts. We quote the language of the last only:

"To Mrs. Caroline Isabella Weller and her bodily heirs, forever, a certain piece or parcel of land on Market street, in Memphis, Tennessee, to be held by her to her own bodily heirs, free from the debts and liabilities of her husband, Jacob Weller." *Bingham* v. *Weller,* supra.

It was held that the husband had, under this deed, a tenacy by the curtesy; his wife having died after having had issue capable of inheriting.

It is insisted for complainants that the failure to use the word "assigns" in the deed has some bearing on the question. We are unable to see how. The words "heirs and assigns" are customary in deeds, but in this State, under our statute (Shannon's Code, section 3672), wholly unnecessary. However, it has been held that the use of the word "assigns" indicates an intention to give the grantee the power of sale. *Teague* v. *Sowder,* 121 Tenn., 132, 114 S. W., 484; *Kendall* v. *Clapp,* 163 Mass., 69, 39 N. E., 773; *Goetz* v. *Ballou,* 64 Hun, 490, 19 N. Y. Supp., 433; *Johnson* v. *Morton,* 28 Tex. Civ. App., 296, 67 S. W., 790, 791. It was therefore a very appropriate pre-

Travis v. Sitz.

caution to omit that word in a deed restraining alienation.

It is insisted that the expression, to "Laura Hudgins and her heirs free from the debts," etc., imports a purpose to cut off the curtesy. The argument is that the use of the word "heirs" was necessary to carry a fee, under our statute, that every word in a deed must be given some meaning, and that the only meaning that could be imputed would be the cutting off of the curtesy, since the heirs would take no interest under the deed free from the debts of the husband, unless the curtesy should be denied. It is enough to say that in the three cases we have cited (*Carter* v. *Dale, Frazer* v. *Hightower,* and *Bingham* v. *Weller*) the same term occurred, and in all of them curtesy was allowed notwithstanding. No importance was attached to the term, as indeed none should have been. Old forms of expression linger in the minds of draftsmen of deeds and other instruments, and importance should not be attached to them, when under the law they do not necessarily show a purpose to qualify estates granted under statutory forms of expression likewise used, where such statutory expressions are themselves sufficient to carry an estate.

Lastly, it is insisted for complainants that, inasmuch as there were four children by the first marriage and only one by the last, the surviving husband, P. T. Sitz, should have a curtesy interest in only an undivided one-fifth of the land. The argument is that, inasmuch as the curtesy was conceded to the

husband originally because of his duty to support the children of the marriage, the reason fails in the case of stepchildren, and therefore the estate should cease in proportion. Whatever may have been the original reason, it has long since become a rule of property that the estate exists when the four requisites which we have recited exist. So, even if all the children should die in early infancy, leaving the father wholly unburdened with the duty of supporting any child, and he should survive his wife, he would under the law be entitled to curtesy, if the other requisites existed. This was the case of *Templeton* v. *Twitty,* 88 Tenn., 595, 606, 14 S. W., 435, in which it was held the husband was entitled to curtesy. This assignment must therefore be overruled.

The result is that, for the reasons herein stated, the decree of the court of civil appeals is in all things affirmed.